**Roberta L. SILVER, Appellee**

v.

**Ralph B. PINSKEY, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 4, 2008.

Filed Sept. 15, 2009.

Ralph B. Pinskey, appellant, Pro Se,

Theresa B. Male, Harrisburg, for appellee.

BEFORE: FORD ELLIOTT, P.J., STEVENS, MUSMANNO, ORIE MELVIN, LALLY–GREEN *, KLEIN, GANTMAN, PANELLA, and DONOHUE, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellant, Ralph B. Pinskey ("Father"), appeals *pro se* from the support order entered in the Dauphin County Court of Common Pleas, asking us to determine whether the trial court had subject matter jurisdiction to award Appellee, Roberta L. Silver ("Mother"), one half of the Social Security benefits Father receives as representative payee for the children. Father also challenges other sections of the order as unenforceable as written. We hold the court's jurisdiction in this case is sound, the Social Security derivative benefits at issue can be subject to legal process under 42 U.S.C.A. § 659 to enforce a child support obligation. Nevertheless, we vacate that part of the order setting Father's basic support obligation at $0.00 and directing him to split with Mother the monthly Social Security derivative payments of $1,164.00. We remand the matter to the trial court to correct the record to comport with the court's intent to ensure the children will benefit from the Social Security derivative payments regardless of whether they are staying with Father or Mother. We af-

* Judge Lally–Green did not participate in the consideration or decision of this case.

firm the support order in all other respects.

¶ 2 The trial court opinion sets forth the relevant facts of this case as follows:

The parties, [Father and Mother], were married in 1991 and separated in 1998. They are the parents of two children currently [sixteen] and [thirteen] years old.[1] Following separation, [M]other maintained primary physical custody through December 31, 2006. As of January 1, 2007, the parties have equally shared physical custody. Both parties are attorneys. Father works full time in a solo practice and [M]other works part time for the Commonwealth, Department of State. Because [F]ather is of retirement age (currently [sixty-nine] years old),[2] both he and his children have been receiving Social Security benefits. Through the end of 2006, [M]other was the representative payee of the children's dependent benefits. Beginning in 2007, [F]ather became the representative payee.

Mother obtained a child support order against [F]ather in 1999 that was modified numerous times over the ensuing years. The May 18, 2006 order, effective June 14, 2006, required [F]ather to pay $392 per month plus $50 per month on arrears. At the time, [M]other was receiving $1,128 per month in Social Security benefits for the children as their representative payee, derivative of [F]ather's [retirement] age. Pursuant to the Support Guidelines, the Social Security income was considered in the support calculations resulting in a credit to [F]ather against his support obligation. . . . On December 5, 2006, [F]ather filed a petition to terminate [the May 18, 2006 support order] on the basis that the

parties had agreed to share physical custody equally. [Additionally, pursuant to Father's request, the Social Security Administration ("SSA") designated Father as representative payee of the children's derivative benefits beginning in January 2007. The SSA erroneously sent the December 2006 payment to Father.] On December 12, 2006, [M]other filed a petition to increase child support due to [F]ather's alleged increased income or earning capacity and her increased expenses for the children.

Following a Domestic Relations Section office conference, [the court entered] two orders of support recommended by the hearing officer. The first, effective December 12, 2006, directed that [F]ather pay child support of $425 per month plus $50 per month on arrears. The second order, effective January 1, 2007, directed [F]ather to pay $310 per month plus $50 on arrears. In recommending these orders, the conference officer assigned [M]other a net monthly income of $3,512.50 derived from an assigned $59,000 full-time yearly earning capacity. Father was assigned a net monthly income of $4,275.66 derived from an assigned annual earning capacity of $42,640, plus his $1,300 per month in Social Security retirement benefits and $250 monthly rental property income. In recommending the support orders, the conference officer followed the formula set forth in the Support Guidelines for treatment of the children's derivative Social Security benefits of $1,164 per month, even though for the second order, [F]ather was the payee of the children's Social Security benefits. . . . Both parties sought *de novo*

---

1. At the time of the court's disposition, the children were fourteen and eleven years old, respectively.

2. At the time of the court's disposition, Father was sixty-seven years old.

review and a hearing was held ... on April 5, 2007.

At the hearing, the principal issue raised by [F]ather was that [M]other should be attributed a higher earning capacity for the purpose of calculating support, noting that under a March 21, 2002 order, [the court] had attributed [M]other a full time annual earning capacity of $59,000 and [F]ather an annual earning capacity of between $38,000 and $41,000. As of 2007, [Father] claimed her earning capacity had increased to $71,000.

The principal issue raised by [M]other was how to address the children's Social Security income since the Support Guideline formula clearly did not address a situation where the obligor is receiving the children's benefits. Mother suggested that the court deviate from the Guidelines in this situation. Mother also raised a number of other issues at the hearing. Though she agreed $71,000 was an accurate earning capacity for her, she argued that if the court assigned her that earning capacity it should also assign [F]ather the same or similar earning capacity. Mother also argued that in determining [F]ather's income, he should be imputed with rental income of $760 per month instead of the $250 per month attributed to him by the hearing officer. Finally, [M]other sought that all the additional expenses she pays out of pocket be included in the support award. Mother argued that although [F]ather is obligated to pay his share of these expenses outside of his monthly obligation, she has had difficulty getting [F]ather to reimburse her for his share of the children's added expenses and this would remedy her collection problem.

At the conclusion of the *de novo* hearing, [the court] stated on the record that effective January 1, 2007, the best solution, given the unique Social Security issue and the fact custody was equally shared, was to assess [F]ather $0 for support but require that he pay [M]other one-half of the $1,164 he receives from the Social Security Administration for their two [children], or $582 per month. [The court] also ordered [F]ather to pay, outside of the support order, one-half of the children's extracurricular activity expenses and one-half of their medical insurance that [M]other is obligated to obtain. [The court] also directed that the parties split the federal tax dependency exemptions. Finally, [the court] added the $1,164 that [F]ather [erroneously] received for the children's December Social Security benefits to his arrears since the support order for that time period was calculated under the Support Guidelines formula which assumes the obligee was receiving the benefits on the children's behalf. Accordingly, on April 5, 2007, [the court] issued an order reflecting its decision [and entered the order on April 20, 2007].

(Trial Court Opinion, filed June 14, 2007, at 1–3) (internal citations omitted). The April 2007 order in full provided:

AND NOW, this 5th day of APRIL, 2007, it is ordered as follows:

[Father] is ordered to pay support effective January 1, 2007 as follows:

$0.00/Week for support of: 2 child(ren)

$0.00/Week on arrears

[Mother] to provide medical insurance

[Father] to pay 50% of unreimbursed medical expenses that exceed $250.00 annually per child and/or spouse. Medical expenses include insurance co-payments and deductibles and all expenses incurred for reasonably necessary medical services and supplies, including but not limited to surgical, dental, orthodontic, optical, psychiatric, psychological or mental health counseling. Medical ex-

penses do not include cosmetic or chiropractic services unless specifically directed in the order of court.

[Mother] is responsible to pay the first $250.00 annually (per child and/or spouse) in unreimbursed medical expenses.

EFFECTIVE JANUARY 1, 2007 EACH PARTY WILL SPLIT THE SOCIAL SECURITY CHECK OF $1,164.00. ADD $1,164.00 REPRESENTING DECEMBER'S SOCIAL SECURITY CHECK TO THE ARREARS. FATHER WILL PAY THE CHILDREN'S SCHOOL LUNCHES WHEN HE HAS CUSTODY. MOTHER WILL PAY SCHOOL LUNCHES DURING HER CUSTODY. FATHER WILL PAY¼ OF [MOTHER'S] HEALTH INSURANCE POLICY WITHIN 30 DAYS. FATHER IS REPONSIBLE TO PAY½ OF THE FOLLOWING EXTRACURRICULAR ACTIVITIES FOR THE CHILDREN: GYMNASTICS, BASEBALL, SOFTBALL, BASKETBALL, PIANO, RELIGIOUS EDUCATION, FIELD TRIPS, AND SUMMER CAMP. FATHER IS RESPONSIBLE TO REIMBURSE [MOTHER] WITHIN 30 DAYS OF RECEIPT OF INVOICES OR BILLS. EACH PARENT TO CLAIM 1 CHILD FOR INCOME TAX EXCEPTION.

(Trial Court Order, dated April 5, 2007 and entered April 20, 2007, at 1–2).

¶ 3 On April 27, 2007, Father timely filed a notice of appeal. On May 4, 2007, the court ordered Father to file a concise statement of matters complained of on appeal, pursuant to Pa.R.A.P.1925(b), which he timely filed on that same day. Father later filed amended Rule 1925(b) statements on June 27, 2007 and July 27, 2007.[3]

¶ 4 On April 4, 2008, a panel of this Court, with one judge dissenting, determined the trial court had erred in directing Father to split the monthly Social Security derivative benefits of $1,164.00, after setting Father's basic support obligation at $0.00. The panel vacated the support order in part and remanded for a new determination of Father's support obligation. Father subsequently requested reargument. By *per curiam* order of May 30, 2008, this Court granted reargument, withdrew its panel decision, directed the case to be listed before an *en banc* panel, and ordered the parties to file additional copies of the brief previously filed, together with a supplemental brief, or prepare and file a substitute brief. Both parties filed substitute briefs.

¶ 5 Father raises the following issues for our review:

WHETHER THE TRIAL COURT HAD SUBJECT MATTER JURISDICTION TO AWARD TO MOTHER, EFFECTIVE JANUARY 1, 2007, HALF THE SOCIAL SECURITY CHECK THAT FATHER RECEIVES AS REPRESENTATIVE PAYEE FOR THE CHILDREN AND/OR TO ADD TO THE ARREARS AN AMOUNT EQUAL TO THE CHILDREN'S DECEMBER SOCIAL SECURITY CHECK?

IN THE ALTERNATIVE, WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY AWARDING TO MOTHER, EFFECTIVE JANUARY 1, 2007, $582 MONTHLY, EQUAL TO HALF THE SOCIAL SECURITY CHECK THAT FATHER RECEIVES AS THE REPRESENTATIVE PAYEE FOR THE CHILDREN AND BY

3. On July 18, 2007, this Court granted Father's application for remand to file an amended Rule 1925(b) statement.

ADDING TO THE ARREARS $1,164, AN AMOUNT EQUAL TO THE CHILDREN'S DECEMBER SOCIAL SECURITY CHECK?

WHETHER FATHER APPEALED ORDER # 1?

WHETHER ORDER # 1 TOOK INTO ACCOUNT FATHER'S 45% SHARED CUSTODY AT THE TIME?

WHETHER THE TRIAL COURT NEEDS TO CLARIFY HOW FA-THER'S TAXES WERE COMPUTED?

WHETHER FATHER SHOULD BE GIVEN CREDIT FOR PRIOR SUP-PORT PAYMENTS MADE TOWARD THE COST OF [N.P.'S] SUMMER CAMP?

WHETHER THERE IS ANY LEGAL AUTHORITY FOR FATHER TO HAVE TO PAY A PORTION OF THE HEALTH INSURANCE COSTS AL-LEGEDLY PAID BY MOTHER'S SPOUSE TO COVER THE CHIL-DREN?

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY RE-QUIRING FATHER TO PAY HALF OF THE COST OF THE CHIL-DREN'S EXTRACURRICULAR AC-TIVITIES?

(Father's Brief at 4–5).[4]

■ ¶ 6 The well-settled standard of review in a child support case provides:

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*Mencer v. Ruch*, 928 A.2d 294, 297 (Pa.Super.2007) (quoting *D.H. v. R.H.*, 900 A.2d 922, 927 (Pa.Super.2006)).

¶ 7 In his first two issues combined, Father argues federal courts have exclusive subject matter jurisdiction to review Social Security Administration ("SSA") decisions. Father contends the trial court has no subject matter jurisdiction to alter the SSA's decision to make him the representative payee of his childrens' Social Se-

---

4. Pennsylvania Rule of Appellate Procedure 2116(a) provides that a statement of questions involved "must never exceed one page." Pa. R.A.P. 2116(a). While this Court has the authority to sanction an appellant who violates Rule 2116(a), the authority is typically not exercised, absent pervasive non-compliance with the Rules of Appellate Procedure. *See Long v. Ostroff*, 854 A.2d 524, (Pa.Super.2004), *appeal denied*, 582 Pa. 700, 871 A.2d 192 (2005) (holding statement of questions involved exceeded one page and appellant failed to comply with other Rules of Appellate Procedure; appellant was not sanctioned because violations did not impede appellate review); *Commonwealth v. Stafford*, 749 A.2d 489 (Pa.Super.2000), *appeal denied*, 568 Pa. 660, 795 A.2d 975 (2000) (stating this Court had power to sanction appellant who filed five-page statement of questions involved; declining to do so "in the interest of justice."). *But see Karn v. Quick & Reilly, Inc.*, 912 A.2d 329 (2006) (holding appellant's appellate brief violated several Rules of Appellate Procedure, including lengthy statement of questions involved; pervasive violations impeded appellate review; appellant's issues were deemed waived due to substantial noncompliance with appellate rules). Here, Father's somewhat lengthy statement does not unduly obstruct our review. Therefore, we decline to waive his issues on that ground.

curity derivative benefits. Father avers the court's actions in effectively splitting the benefits constituted a "legal process" in violation of 42 U.S.C.A. § 407(a), which provides that no Social Security payments shall be subject to, *inter alia*, attachment, garnishment or other legal processes. Father acknowledges 42 U.S.C.A. § 659(a) serves as an exception to Section 407(a), and permits the attachment of Social Security benefits to satisfy a child support obligation. Nevertheless, Father insists the exception applies only to past due child support, not to the children's Social Security derivative benefits he receives as the representative payee. Father maintains if Mother wanted to continue receiving derivative benefits on behalf of the children, she should have pursued and exhausted her administrative remedies with the SSA.

¶ 8 Alternatively, Father claims the court's deviation from the child support guidelines does not comply with the procedure set forth in Pa.R.C.P.1910.16–5(b), which requires the court to consider nine (9) factors before deciding to deviate from the support guidelines. Father concedes the childrens' derivative benefits could arguably be considered "other income in the household" pursuant to Rule 1910.16–5(b), and acknowledges the court considered the derivative benefits as "other income." Father argues, however, the court did not consider any other factors under Rule 1910.16–5(b), including the income of Mother's husband and the income Mother could earn if she worked full time. Father also contends the court calculated his rental income incorrectly, causing the court to assign equal incomes to each of the parties. Father concludes this Court must vacate and remand for a new determination of Father's support obligation. We disagree in part and agree in part with Father's contentions.

¶ 9 Preliminarily, we observe: "Subject matter jurisdiction relates to the competency of a court to hear and decide the type of controversy presented. Jurisdiction is a matter of substantive law. 42 Pa.C.S. § 931(a) (defining the unlimited original jurisdiction of the courts of common pleas)." *Commonwealth v. Bethea*, 574 Pa. 100, 113, 828 A.2d 1066, 1074 (2003), *cert. denied*, 540 U.S. 1118, 124 S.Ct. 1065, 157 L.Ed.2d 911 (2004). "The trial court has jurisdiction if it is competent to hear or determine controversies of the general nature of the matter involved *sub judice*. Jurisdiction lies if the court had power to enter upon the inquiry, not whether it might ultimately decide that it could not give relief in the particular case." *Drafto Corp. v. National Fuel Gas Distribution Corp.* 806 A.2d 9, 11 (Pa.Super.2002) (quoting *Aronson v. Sprint Spectrum, L.P.*, 767 A.2d 564, 568 (Pa.Super.2001), *appeal denied*, 566 Pa. 632, 781 A.2d 137 (2001)).

> Issues pertaining to jurisdiction are pure questions of law, and an appellate court's scope of review is plenary. Questions of law are subject to a *de novo* standard of review. Any issue going to the subject matter jurisdiction of a court or administrative tribunal to act in a particular matter is an issue the parties cannot waive by agreement or stipulation, estoppel, or waiver. In other words, the parties or the court *sua sponte* can raise a challenge to subject matter jurisdiction at any time.

*Robert Half Intern., Inc. v. Marlton Technologies, Inc.*, 902 A.2d 519, 524–25 (Pa.Super.2006) (en banc).

¶ 10 Pursuant to the Social Security Act, derivative benefits are available to dependent children of an individual entitled to Social Security retirement benefits. 42 U.S.C.A. § 402(d)(1). The benefits are made to the minor's "representative payee" who must use them "for the use and

benefit of the beneficiary." 20 C.F.R. §§ 416.640, 404.2010. Benefits are distributed "for the use and benefit of the beneficiary if they are used for the beneficiary's current maintenance," including costs associated with obtaining "food, shelter, clothing, medical care and personal comfort items." 20 C.F.R. § 404.2040(a).

¶ 11 Section 407 of the Social Security Act provides:

### § 407. Assignment; amendment of section

(a) The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

(b) No other provision of law, enacted before, on, or after April 20, 1983, may be construed to limit, supersede or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section.

\* \* \*

42 U.S.C.A. § 407(a)-(b). Under Section 407, protected funds such as benefit payments under the supplemental security income program cannot be reached through legal process. *Tunnicliff v. Commonwealth Department of Public Welfare*, 483 Pa. 275, 281, 396 A.2d 1168, 1171 (1978).

¶ 12 Nevertheless, Section 659 of the Social Security Act provides:

### § 659. Consent by the United States to income withholding, garnishment, and similar proceedings for enforcement of child support and alimony obligations

(a) Consent to support enforcement

Notwithstanding any other provision of law (including section 407 of this title and section 5301 of Title 38), effective January 1, 1975, moneys (the entitlement to which is based upon remuneration for employment) due from, or payable by, the United States or the District of Columbia (including any agency, subdivision, or instrumentality thereof) to any individual, including members of the Armed Forces of the United States, shall be subject, in like manner and to the same extent as if the United States or the District of Columbia were a private person, to withholding in accordance with State law enacted pursuant to subsections (a)(1) and (b) of section 666 of this title and regulations of the Secretary under such subsections, and to any other legal process brought, by a State agency administering a program under a State plan approved under this part or by an individual obligee, to enforce the legal obligation of the individual to provide child support or alimony.

\* \* \*

42 U.S.C.A. § 659(a).

¶ 13 Rule 1910.16–1 of the Pennsylvania Rules of Civil Procedure introduces the state support guidelines and in relevant part provides:

### Rule 1910.16–1. Amount of Support. Support Guidelines

(a) Applicability of the Support Guidelines.

(1) Except as set forth in subdivision (2) below, the support guidelines set forth the amount of support which a spouse or parent should pay on the basis of both parties' net monthly incomes as defined in Rule 1910.16–2 and the number of persons being supported.

\* \* \*

(3) The support of a spouse or child is a priority obligation so that a party is

expected to meet the obligation by adjusting his or her other expenditures.

(b) **Amount of Support.** The amount of support (child support, spousal support or alimony *pendente lite* ) to be awarded pursuant to the procedures under Rules 1910.11 and 1910.12 shall be determined in accordance with the support guidelines, which consist of the guidelines expressed as the child support schedule set forth in Rule 1910.16–3, the formula set forth in Rule 1910.16–4 and the operation of the guidelines as set forth in these rules.

\* \* \*

(d) **Rebuttable Presumption.** If it has been determined that there is an obligation to pay support, there shall be a rebuttable presumption that the amount of the award determined from the guidelines is the correct amount of support to be awarded. The support guidelines are a rebuttable presumption and must be applied taking into consideration the special needs and obligations of the parties. The trier of fact must consider the factors set forth in Rule 1910.16–5. The presumption shall be rebutted if the trier of fact makes a written finding, or a specific finding on the record, that an award in the amount determined from the guidelines would be unjust or inappropriate.

\* \* \*

Pa.R.C.P.1910.16–1. Rule 1910.16–2 in pertinent part provides:

**Rule 1910.16–2. Support Guidelines. Calculation of Net Income**

Generally, the amount of support to be awarded is based upon the parties' monthly net income.

(a) **Monthly Gross Income.** Monthly gross income is ordinarily based upon at least a six-month average of all of a party's income. The term "income" is defined by the support law, 23 Pa.C.S.A. § 4302, and includes income from any source. The statute lists many types of income including, but not limited to:

\* \* \*

(6) Social Security disability benefits, Social Security retirement benefits, temporary and permanent disability benefits, workers' compensation and unemployment compensation;

\* \* \*

(b) **Treatment of Public Assistance, SSI Benefits and Social Security Payments to a Child Due to a Parent's Death, Disability or Retirement.**

\* \* \*

(2) If a child for whom support is sought is receiving Social Security benefits as a result of a parent's retirement, death or disability, the benefits the child receives shall be added to the combined monthly net incomes of the obligor and the obligee to calculate the income available for support on the vertical axis of the basic child support schedule set forth in Rule 1910.16–3. The presumptive amount of support as set forth on the schedule at the combined income of the obligee, obligor and child's benefits shall then be reduced by the amount of the child's benefits before apportioning the remaining support obligation between the parties pursuant to Rule 1910.16–4. For purposes of determining the support obligation of a surviving parent when the child is receiving benefits as the result of the other

parent's death, the income of a non-parent obligee who is caring for a child but has no support obligation to that child shall include only those funds the obligee is receiving on behalf of the child.

\* \* \*

Pa.R.C.P.1910.16–2(a)(6), (b)(2). Rule 1910.16–3 provides the schedule used to calculate the basic child support obligation using the formula in Rule 1910.16–4 as follows:

**Rule 1910.16-4. Support Guidelines. Calculation of Support Obligation, Formula**

(a) The following formula shall be used to calculate the obligor's share of the basic guideline child support, spousal support and/or alimony *pendente lite* obligation:

*PART I. BASIC CHILD SUPPORT*

| | OBLIGOR | OBLIGEE |
|---|---|---|
| 1. Total Gross Income Per Pay Period | | |
| 2. Less Deductions | ( ) | ( ) |
| 3. Net Income | | |
| 4. Conversion to Monthly Amount (if pay period is other than monthly) | | |
| 5. Combined Total Monthly Net Income | | |
| 6. Plus Child's Monthly Social Security Death, Retirement or Disability Derivative Benefit, if any. (See Rule 1910.16-2(b)(2)) | | |
| 7. Adjusted Combined Monthly Net Income | | |
| 8. PRELIMINARY BASIC CHILD SUPPORT OBLIGATION (determined from schedule at Rule 1910.16-3 based on number of children and line 7 adjusted combined monthly net income) | | |
| 9. Less Child's Monthly Social Security Derivative Benefit | | |
| 10. BASIC CHILD SUPPORT OBLIGATION | | |
| 11. Net Income Expressed as a Percentage Share of Income (divide line 4 by line 5 and multiply by 100) | % | % |
| 12. Each Parent's Monthly Share of the Basic Child Support Obligation (multiply line 10 and 11) | | |

\* \* \*

Pa.R.C.P.1910.16–4(a).[5] The rule also provides for substantial or shared custody adjustments, if applicable, and for additional expenses. *Id. Part II, Part III. See also* Pa. R.C.P.1910.16–4(c).

¶ 14 Rule 1910.16–5 sets forth the relevant factors the court must consider when deciding whether to deviate from the basic support obligation calculated under Rule 1910.16–4 and states:

**Rule 1910.16–5. Support Guidelines. Deviation**

(a) **Deviation.** If the amount of support deviates from the amount of support determined by the guidelines, the

---

**5.** These calculations do not take into account who is the representative payee for the children's Social Security derivative benefits.

trier of fact shall specify, in writing, the guideline amount of support, and the reasons for, and findings of fact justifying, the amount of the deviation.

*Note:* The deviation applies to the amount of the support obligation and not to the amount of income.

**(b) Factors.** In deciding whether to deviate from the amount of support determined by the guidelines, the trier of fact shall consider:

(1) unusual needs and unusual fixed obligations;

(2) other support obligations of the parties;

(3) other income in the household;

(4) ages of the children;

(5) assets of the parties;

(6) medical expenses not covered by insurance;

(7) standard of living of the parties and their children;

(8) in a spousal support or alimony pendente lite case, the period of time during which the parties lived together from the date of marriage to the date of final separation; and

(9) other relevant and appropriate factors, including the best interests of the child or children.

\* \* \*

Pa.R.C.P.1910.16–5(a)–(b).

¶ 15 As these rules and the prevailing case law make clear, a court generally has reasonable discretion to deviate from the guidelines if the record supports the deviation. *Ricco v. Novitski,* 874 A.2d 75, 82 (Pa.Super.2005), *appeal denied,* 586 Pa. 714, 889 A.2d 1217 (2005) (internal citations omitted). Social Security derivative benefits "are 'other income in the household' and in the trial court's discretion, may be considered as a basis for deviating from the guidelines when it is

necessary to avoid an unjust or inappropriate result." *Landis v. Landis,* 456 Pa.Super. 727, 691 A.2d 939, 941 (1997). In a support guidelines case, once the court has properly consulted the guidelines, it has the discretion to deviate from the guidelines figure, as long as the court provides adequate reasons for the deviation. *Id.* at 943.

¶ 16 Above all, we are mindful of the general principle that a parent's duty to support his minor children is absolute, and the purpose of child support is to promote the children's best interests. *Ricco, supra* at 80. The court has no legal authority to eliminate an obligor's support obligation, where the obligor can reasonably provide for some of the children's needs. *Id.* at 83.

¶ 17 In the instant case, with regard to Father's jurisdictional challenge, the central dispute before the court was the issue of child support. No one asked the court to review or alter the SSA's decision to designate Father as the representative payee of the children's Social Security derivative benefits. Instead, the court was asked to adjust the parties' respective child support obligations in view of the alleged increase in Father's income, the alleged increase in the expenses for the children, the anticipated split custody arrangement, and the fact that Father is now the representative payee of the children's Social Security derivative benefits. Moreover, Section 659 of the Social Security Act provides an exception to the general prohibitions contained in Section 407, and allows otherwise protected funds to be reached through legal process to enforce "the legal obligation of the individual to provide child support." *See* 42 U.S.C.A. § 659(a). Nothing in the statute restricts the exception only to past due child support. As a result, we reject Father's chal-

lenges to the court's subject matter jurisdiction over the case.

¶ 18 As to Father's second challenge to the support order, we observe that when Mother had primary physical custody of the children, she was also the "representative payee" of the children's Social Security derivative benefits. Under the May 12, 2006 support order, the Social Security derivative benefits notably reduced Father's basic monthly child support obligation for both children. The May 2006 order also included a "substantial or shared physical custody" adjustment for the percent of time the children spent in Father's custody (45.21%). As a result, Father received a further downward modification of his basic child support obligation. Therefore, when Mother was primary custodial parent and representative payee of the Social Security derivative benefits, Father's child support obligation was lowered although not eliminated. That way, the children benefited from the Social Security derivative payments regardless of where they were staying.

¶ 19 Then, Mother and Father agreed to split (50–50) physical custody of the children, to begin on January 1, 2007. Before the formal change in custody, Father unilaterally petitioned for and the SSA approved Father's designation of himself as the "representative payee" of the children's Social Security derivative benefits. As a result, **Father** received 100% of the derivative benefits, payable for the month of December 2006, plus his reduced basic child support obligation, although Mother was no longer the representative payee of the derivative benefits but was still the primary custodian of the children.

¶ 20 In December 2006, Father also petitioned the court to modify the May 12, 2006 child support order, because the parties had recently agreed to split physical custody of the children. Likewise, Mother petitioned the court to modify the May 12, 2006 child support order, because both Father's income and Mother's expenses for the children had increased. Following a support conference, the court issued two orders based upon the recommendations of the domestic relations support officer. Before recommending the orders, the support officer followed the formula in the support guidelines to assign the parties' respective net monthly incomes and support obligations. The conference officer's calculations revealed Father had more net monthly income available for child support. The first order, as recommended by the support officer, to be effective December 12, 2006, directed Father to pay $425.00 plus $50.00 in arrears per month in child support for both children. The second order, to be effective January 1, 2007, directed Father to pay $310.00 plus $50.00 in arrears per month in child support for both children. Under each order, Father retained a basic support obligation.

¶ 21 Both parties sought *de novo* review, and the court held a hearing on April 5, 2007. At the hearing, Father argued Mother should be attributed a higher earning capacity for purposes of calculating child support. Mother's principal concern was how to address the Social Security derivative benefits where Father was the obligor for purposes of child support and also the representative payee of the derivative benefits. Further, Mother argued Father's earning capacity should be increased as well. Mother also asked the court to include certain additional expenses in the support order, because she routinely had difficulty getting Father to reimburse her for his share of the children's additional expenses.

¶ 22 Upon conclusion of the hearing, the court stated on the record that given the unique Social Security derivative benefits issue and the fact that custody was split,

the court would set Father's basic support obligation and arrears at $0.00, effective January 1, 2007, and direct Father to pay Mother an amount equal to one-half of the $1,164.00 in Social Security derivative benefits he receives for the two children, or $582.00 per month, to prevent Father from receiving a "windfall" as the representative payee.

¶ 23 The court explained:

In order to address [F]ather's arguments, this court must first explain its reasoning for technically ordering $0 in child support but directing that [F]ather pay [M]other $582 from the Social Security [derivative] benefits; i.e., treating that payment in the nature of child support. Although I did [not] state so directly on the record, I clearly meant to treat the parties identically, including in terms of their incomes. An order of $0 of support corresponds to each party owing the other the identical amount in support, as reflected in my finding that each party was one-half responsible for the children's extracurricular activity expenses and medical insurance. The only difference between the parties' situations was that [F]ather had at his disposal $1,164 per month in children's Social Security benefits to provide for the children's support. Thus, the proper result in this atypical situation, where he was receiving a monthly windfall ... was to require that he pay [$582] to [M]other, which is ultimately an award in the nature of child support.... This would ensure that [M]other be treated similarly to how [f]ather had been treated under previous orders, as required by the Support Guidelines, whereby he received credit against his child support obligation for the children's Social Security [derivative] benefits when [M]other was the representative payee.

(Trial Court Opinion at 4). The court also noted that when Mother was representative payee of the children's Social Security derivative benefits, Father enjoyed a reduction of his basic support obligation per the guidelines from $808 per month to $275 per month. (*Id.* at n. 2). Thus, we have no reason to doubt the court's intention. Nevertheless, its final support order is internally inconsistent because it fails to follow the state support guidelines in view of the federal statutes at issue.

¶ 24 When Mother had primary custody, she also served as the representative payee for the children's Social Security derivative benefits. Father enjoyed a reduced support obligation as a result of the derivative benefits and the substantial physical custody adjustment. Even under those conditions, Father still had a support obligation. In the current situation, the parties share 50–50 custody, and Father is now the representative payee of the children's Social Security derivative benefits. Under the support guidelines, the conference officer calculated Father as still having a support obligation. Thus, the record does not sustain the court's decision to set Father's monthly support obligation at $0.00. Moreover, without a basic support obligation, the court borders on subjecting the Social Security derivative benefits to legal process in violation of the federal statutes. *See* 42 U.S.C.A. §§ 407, 659.

¶ 25 No doubt reasonable minds could advocate that what the court did in the present case and what the court did in *Landis, supra,* is simply a distinction without a difference. In *Landis,* the mother had custody of the parties' two children. The court treated one child's Supplemental Security Income (SSI) as "other income in the [mother's] household," deviated downward from the support guidelines, and set the father's child support obligation at a reduced amount. This Court affirmed on

appeal the court's treatment of the child's SSI as "other income in the household" under Rule 1910.16–5 and verified it a basis for deviating downward from the guidelines to avoid an unjust and inappropriate result. *See id.* We observe, however, that the *Landis* case involved a fairly simple **downward** deviation from a guidelines child support obligation to a lower obligation.

 ¶ 26 Here, the court began by essentially eliminating altogether any basic child support obligation for Father under the guidelines and then ordering Father to split the children's monthly Social Security derivative benefits with Mother. Although the court explained its decision as a technicality, it effectively dispensed with the support guidelines and the federal statutes as a whole, which we cannot ignore. Under these circumstances, the best resolution of this case is to vacate that part of the order setting Father's basic support obligation at $0.00 and directing Father to split the monthly Social Security derivative benefit of $1,164.00 with Mother, because the order does not address the support guidelines or the interaction of the order with the federal statutes. We therefore remand the matter to the trial court to perform a guidelines calculation of Father's basic support obligation. Once Father's basic support obligation is established under the guidelines, the court can consider the Social Security derivative benefits as "other income in Father's household" available for child support and deviate upward from the guidelines to effect equity and avoid an unjust or inappropriate result. *See Landis, supra.* In that way, the court can achieve its stated intention to ensure that the children benefit from their Social Security derivative payments regardless of whether they are staying with Father or Mother.

¶ 27 In his third and fourth issues combined, Father argues the court did not perform a "substantial or shared physical custody" calculation when it issued the support order, effective from December 12, 2006 to December 31, 2006, directing Father to pay $425.00 per month in child support for both children, plus $50.00 in arrears. Father claims a "substantial or shared physical custody" calculation would account for the percent of custody time the children spent with Father (45.21%) as of the December 12, 2006 effective date of the order. As a result, Father maintains he did not receive a downward adjustment of his child support obligation for the period from December 12, 2006 to December 31, 2006. Father contends the court upheld the terms of this support order following the April 2007 hearing due to its belief that Father had not appealed the order. Father avers he appealed this support order in his request for a *de novo* hearing filed January 25, 2007. Father concludes this Court should vacate the order and remand for a new determination of Father's support obligation from December 12, 2006 to December 31, 2006.

¶ 28 Due to our disposition concerning Father's previous claims, we need not address this issue. Upon remand, the trial court must ensure that Father's (45.21%) shared physical custody for the period from December 12, 2006 to December 31, 2006, will be accounted for when it performs the recalculation of Father's support obligation for that month.

 ¶ 29 In his fifth issue, Father expresses concern that the court did not calculate his net income correctly for the purposes of the child support orders effective December 12, 2006, January 1, 2007, and April 20, 2007 respectively. Specifically, Father claims the court might have failed to account for the Social Security taxes he pays as a self-employed attorney,

and the taxes he pays on his Social Security benefits. Father contends his net income will be overstated if the court does not incorporate these taxes in its calculations. Father concludes this Court should vacate the orders and remand for a new determination of Father's support obligation which considers all of the taxes he pays. Here, Father presents no evidence the court failed to account for all of the taxes Father pays when the court calculated Father's net income. Father's contention is mere speculation, without basis in fact. Therefore, we decline to consider this claim.

¶ 30 In his sixth issue, Father complains the court did not credit him for prior support payments he had made toward the cost of [N.P.'s] summer camp. Specifically, Father contends the court included summer camp costs in its prior support orders and spread the costs over a twelve (12) month period so the money would be available when the camp's registration fee was due. Father avers the April, 20 2007 support order directing him to pay half of [N.P.'s] summer camp costs did not consider his payments related to the prior support orders. Father claims the April, 20 2007 order results in a "windfall" for Mother by allowing her to receive half the cost of summer camp in addition to the periodic summer camp payments Father claims he paid her in prior months. Father concludes this Court should vacate the April 20, 2007 order and remand for a new determination of Father's support obligation to account for his previous summer camp payments. Instantly, the court indicated it had an "understanding that all credits have been attributed to [Father] by the domestic relations section." (Trial Court Opinion at 11). A review of the record fails to indicate any credits attributable to Father. In light of Father's generic claim, we also decline relief on this ground.

¶ 31 In his seventh and eighth issues combined, Father argues the children are covered by health insurance provided by Mother's spouse. Father contends Pa. R.C.P.1910.16–6(b)(1) authorizes a court to allocate health insurance costs between Father and Mother if one of the parties pays the premium and a statutory duty of support is owed to the person who pays the premium. Father contends Mother's spouse is paying the premium for the children's health insurance and her spouse does not qualify as a "party" or as someone to whom Father owes a statutory duty of support under Pa.R.C.P.1910.16–6(b)(1). Father avers the court had no authority to direct Father to pay one-quarter of the health insurance costs of Mother's spouse.

¶ 32 With respect to the children's extracurricular expenses, Father claims all of the children's extra-curricular activities, with the exception of summer camp and Hebrew School, are already addressed by the basic child support guidelines. Father maintains the activities are not subject to Pa.R.C.P.1910.16–6(d), and the court has no authority to direct him to pay one-half of the cost of these activities. Father concludes this Court should vacate the April 20, 2007 order and remand for a new determination of Father's obligation with respect to health insurance and extra-curricular expenses. We disagree.

¶ 33 Rule 1910.16–6 sets forth the allocation of additional expenses between parties in relevant part as follows:

**Rule 1910.16–6. Support Guidelines. Adjustments to the Basic Support Obligation. Allocation of Additional Expenses**

Additional expenses permitted pursuant to this Rule 1910.16–6 may be allocated between the parties even if the parties' incomes do not justify an order of basic support.

* * *

**(b) Health Insurance Premiums.**

**(1)** A party's payment of a premium to provide health insurance coverage on behalf of the other party and/or the children shall be allocated between the parties in proportion to their net incomes, including the portion of the premium attributable to the party who is paying it, as long as a statutory duty of support is owed to the party who is paying the premium. If health insurance coverage for a child who is the subject of the support proceeding is being provided and paid for by a third party resident of the household, the cost shall be allocated between the parties in proportion to their net incomes. If the obligor is paying the premium, then the obligee's share is deducted from the obligor's basic support obligation. If the obligee is paying the premium, then the obligor's share is added to his or her basic support obligation. Employer-paid premiums are not subject to allocation.

* * *

**(c) Unreimbursed Medical Expenses.** Unreimbursed medical expenses of the obligee or the children shall be allocated between the parties in proportion to their respective net incomes. Notwithstanding the prior sentence, there shall be no apportionment of unreimbursed medical expenses incurred by a party who is not owed a statutory duty of support by the other party. The court may direct that obligor's share be added to his or her basic support obligation, or paid directly to the obligee or to the health care provider.

**(1)** For purposes of this subdivision, medical expenses are annual unreimbursed medical expenses in excess of $250 per person. Medical expenses include insurance co-payments and deductibles and all expenses incurred for reasonably necessary medical services and supplies. Including but not limited to surgical, dental and optical services, and orthodontia. Medical expenses do not include cosmetic, chiropractic, psychiatric, psychological or other services unless specifically directed in the order of court.

* * *

**(d) Private School Tuition. Summer Camp. Other Needs.** The support schedule **does not take into consideration expenditures for private school tuition or other needs of a child which are not specifically addressed by the guidelines.** If the court determines that one or more such needs are reasonable, the expense thereof shall be allocated between the parties in proportion to their net incomes. The obligor's share may be added to his or her basic support obligation.

* * *

Pa.R.C.P.1910.16–6(b)(1), (c)(1), (d) (emphasis added).

¶ 34 In response to Father's arguments the trial court reasoned as follows:

As directed by this court, [M]other is required under the support order to provide health insurance for the children. Under support law, [F]ather is required to pay his proportionate share of those expenses. Father is not being asked to "compensate" [M]other for the cost of the children's health insurance but to pay **his** proportionate share. That a third party is paying **[M]other's** obligation to provide the children with health insurance does not alter the existence of [F]ather's legal obligation.

\* \* \*

It is this court's interpretation of [Rule 1910.16–6(d)] that it applies broadly to expenditures made by a parent for his or her children's extracurricular activities, so long as the expenditures are reasonable, since these are types of expenditures not otherwise "specifically addressed by the guidelines." As such, [F]ather is obligated to pay one-half of the children's reasonable extracurricular expenses incurred by [M]other.

Father argues further that the requirement he pay one-half the costs of certain expenses with which he does not agree (piano and gymnastics), interferes with his joint legal custody rights. As noted, a parent's obligation to pay his or her proportionate share of expenses under Rule 1910.16–6(d) exists only where expenses are reasonable. The activities in question, gymnastics and piano, appear reasonable for the children in this case, given their parents' incomes and station in life. Otherwise, [F]ather has not suggested why these expenses are unreasonable.

(Trial Court Opinion at 10, 11) (internal citations and footnotes omitted) (emphasis in original).

¶ 35 We accept the court's analysis. The April 20, 2007 support order directs Mother to provide the children's health insurance. Mother's current spouse provides health insurance for both children at the total cost of $64.03 per month. Allocating this amount between Mother and Father results in a monthly obligation of $32.01 per month for each parent. Thus, Father's obligation is apparent, *see* Pa. R.C.P.1910.16–6(b)(1), and it would increase substantially if the children were not covered under Mother's spouse's policy. Further, under Rule 1910.16–6, Mother's spouse is a third party with respect to Mother and Father and the cost of the health insurance provided by him can be allocated between Mother and Father. Therefore, the court had the authority to order Father to pay part of the health insurance premium. In fact, as a result of the court's support order, Mother is required to pay the first $250.00 of unreimbursed medical expenses per child. Father's obligation kicks in at 50% only for the unreimbursed medical expenses which exceed $250.00.

¶ 36 Additionally, Father does not argue the expenses related to the children's extra-curricular activities are unreasonable. The parties have previously provided for the children's extra-curricular activities, and the expenses associated with these activities are consistent with the family's standard of living and station in life. *See Holland v. Holland,* 444 Pa.Super. 251, 663 A.2d 768 (1995) (holding daughter's equestrian activities were important to her well-being and constituted "other needs," which were not specifically addressed by guidelines); *Marshall v. Marshall,* 404 Pa.Super. 628, 591 A.2d 1060 (1991) (holding music lessons, dance lessons, and racquet and swim club memberships were reasonable needs, which were not addressed by guidelines). Here, the children's extra-curricular activities, including, gymnastics, baseball, softball, basketball, piano, religious education, field trips and summer camp, constitute "other needs" pursuant to Rule 1910.16–6(d), and the court properly ordered Father to pay one-half of the expenses associated with these activities.

¶ 37 Based upon the forgoing, we hold the court's jurisdiction in this case is sound, the Social Security derivative benefits at issue can be subject to legal process under 42 U.S.C.A. § 659 to enforce a child support obligation. Nevertheless, we vacate that part of the order setting Father's basic support obligation at $0.00 and di-

recting him to split with Mother the monthly Social Security derivative payments of $1,164.00. We remand the matter to the trial court to correct the record to comport with the court's intent to ensure the children will benefit from the Social Security derivative payments regardless of whether they are staying with Father or Mother. We affirm the support order in all other respects.

¶ 38 Order affirmed in part, vacated in part; case remanded with instructions. Jurisdiction is relinquished.