2022 PA Super 48

| | | |
|---|---|---|
| ROBERT A. SICHELSTIEL, JR. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VICTORIA L. SICHELSTIEL | : | No. 1804 EDA 2020 |

Appeal from the Order Entered July 27, 2020,
in the Court of Common Pleas of Montgomery County,
Civil Division at No(s):  No. 2003-05445.

BEFORE:   KUNSELMAN, J., NICHOLS, J., and STEVENS, P.J.E.*

OPINION BY KUNSELMAN, J.:                    **FILED MARCH 17, 2022**

Appellant Robert A. Sichelstiel, Jr. (Father) challenges the child support obligation that the trial court ordered him to pay Appellee Victoria L. Sichelstiel (Mother) for their 17-year-old daughter.  Specifically, Father disputes the calculation of his net income.  In determining Father's net income, the hearing officer included all of Father's "flow-through" income, which Father receives from various business ventures.  However, most of the flow-through income was retained by the businesses, and Father only received relatively small distributions.  The trial court adopted the hearing officer's recommendation, and it ordered Father to pay Mother $2,361.96 per month in child support.  On appeal, Father argues the flow-through income should have been excluded from his net income, because as a minority owner of those businesses, he had

_____

* Former Justice specially assigned to the Superior Court.

no control over the decision to retain or distribute earnings. After review, we agree with Father's position. For the reasons below, we vacate that portion of the trial court's order and remand for further proceedings.

The factual and procedural history may be abbreviated as follows: The parties married in 1996, and the daughter was born in June 2002. The parties divorced in 2003, and Father paid support directly to Mother for approximately 16 years. In May 2019, Mother filed a complaint for child support, and the matter was set before a hearing officer. The hearing officer determined Father's monthly net income was $22,842.80, and that it came from three sources: Father's salary from his employment as a commercial real estate broker; his one-time performance bonus; and his income from various business ventures.

This appeal only involves the third category - Father's income from the business ventures. Father owns a minority interest in nine separate businesses. According to Father's 2018 tax return, Father received $155,014 in flow-through income from these businesses. Each of these businesses elected to avoid tax liability at the corporate level by requiring the individual owners to report the income on their personal tax returns.

This sort of income structure is commonly referred to as "flow-through" or "pass-through" income because the income flows through the corporation to the individual taxpayers. The taxpayers' flow-through income is reported on the Schedule K-1 of Tax Form 1065. The Schedule K-1 denotes each

individual's ownership share, and whether the business retained or distributed its earnings to the owners.

Of Father's nine businesses, three distributed earnings totaling $23,041 to him; the rest of the businesses retained the balance of his flow-through income (approximately $131,973). Moreover, Father testified he used virtually all the distributed earnings he received to pay the tax liability that he owed on the entirety of the flow-through income. Thus, at the support hearing, Father argued that since none of the flow-through income ultimately went into his pocket, none should be considered when calculating his child support obligation.

To calculate Father's monthly net income, the hearing officer included all of Father's flow-through income, both the distributed earnings and the retaining earnings, totaling $155,014. The hearing officer then determined Father's monthly net income was $22,842.80. Under the support guidelines, the hearing officer recommended Father's child support in the amount of $2,361.96 per month, effective December 1, 2019 forward.[1]

Father filed exceptions with the trial court, arguing that the hearing officer misapplied the law on flow-through income. The trial court dismissed

_____

[1] Although irrelevant for our purposes, we note that the child support obligation was broken down into four separate time-periods to account for the changes in the medical insurance costs. The obligations spanned from: 1) May 2019 to August 2019; 2) August 2019 to October 2019; 3) October 2019 to November 2019; and 4) December 2019 forward. Father's obligation presumably terminated in June 2020, which was month when the parties' daughter turned 18 and was set to graduate from high school.

Father's exceptions by its order dated July 27, 2020. In reaching its decision, the trial court hypothesized that even if the hearing officer made a mistake, the amount of Father's support obligation was still appropriate. The trial court reasoned that, per Pennsylvania Rule of Procedure 1910.16-4, the hearing officer could have deviated Father's obligation upward, because his daughter does not spend any overnights with him. The court ruled that if the hearing officer did not include Father's flow-through income, but deviated the award upward, the result would be essentially the same. Father timely filed[2] this appeal, and he presents the following issues for our review:

1. Whether the trial court erred as a matter of law and committed an abuse of discretion in including Father's flow-through income from his minority interest in several real estate ventures, when Father presented uncontroverted evidence establishing that he does not have control over the distributions of income from the entities in which he has a non-controlling interest and only received actual distributions to pay taxes on the flow-through income and as a transfer to another entity for repair costs.

2. Whether the trial court erred as a matter of law and committed an abuse of discretion when it made a finding that the support hearing officer made credibility determinations regarding Father's income when neither the record or the recommendation and order of the support hearing officer support a

_____

[2] We observe that Father filed his Concise Statement of Matters of on Appeal on September 3, 2020. For reasons unclear, the trial court did not issue its Pa.R.A.P. 1925(a) opinion until March 30, 2021, almost seven months later. We remind the trial court that it **shall** file its opinion within 60 days of the filing of the notice of appeal – and within 30 days if the case is designated a "children's fast track appeal." **See** Pa.R.A.P. 1931(a) (emphasis added). This extended delay only complicates any potential overpayment upon remand.

- 4 -

conclusion that the support hearing officer found Father's testimony or evidence lacking in credibility.

3. Whether the trial court erred as a matter of law and committed an abuse of discretion when it found that Father failed to meet his burden that he did not control the ability to retain or disburse earnings or that K-1 income reflected on a tax return was not actually received.

4. Whether the trial court erred as a matter of law and committed an abuse of discretion when it made a finding that the support hearing officer could have increased the base order by 30%, or $670.80 per month, pursuant to Pennsylvania Rule of Civil Procedure 1910.16-4 for lack of parenting time.

Father's Brief at 8 (capitalization adjusted).

We begin with our well-settled standard of review in matters concerning child support orders:

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*Silver v. Pinskey*, 981 A.2d 284, 291 (Pa. Super. 2009) (*en banc*) (citation omitted).

In Pennsylvania, child support awards are calculated in accordance with specific statutory guidelines, using a complex system that accounts for the

obligor's capacity to pay and the reasonable needs of the particular children. ***Commonwealth v. Hall***, 80 A.3d 1204, 1216 (Pa. 2013). The guidelines provide extremely detailed instructions for calculating child support awards based on the obligor's net income from all sources. ***Id***. at 1217; ***see also*** 23 Pa.C.S.A. § 4322(a). As a general rule, the amount of support to be awarded is based upon the parties' monthly net income over at least a six-month average. ***See*** Pa.R.C.P. 1910.16-2.

Moreover, the Domestic Relations Code defines the term "income" and includes income from any source. Pa.R.C.P. 1910.16-2(a); ***see also*** 23 Pa.C.S.A. § 4302. Income is defined as follows:

> "**Income**." Includes compensation for services, including, but not limited to, wages, salaries, bonuses, fees, compensation in kind, commissions and similar items; ***income derived from business***; gains derived from dealings in property; interest; rents; royalties; dividends; annuities; income from life insurance and endowment contracts; all forms of retirement; pensions; income from discharge of indebtedness; ***distributive share of partnership gross income***; income in respect of a decedent; income from an interest in an estate or trust; military retirement benefits; railroad employment retirement benefits; social security benefits; temporary and permanent disability benefits; workers' compensation; unemployment compensation; other entitlements to money or lump sum awards, without regard to source, including lottery winnings; income tax refunds; insurance compensation or settlements; awards or verdicts*;* and any form of payment due to and collectible by an individual regardless of source*.*

23 Pa.C.S.A. § 4302 (emphasis added).

To arrive at the monthly net income, the court shall deduct specific items from the monthly gross income. **See** Pa.R.C.P. 1910.16-2(c)(1). Rule 1910.16-2(c)(1) provides, in relevant part:

> (1) Unless these rules provide otherwise, the trier-of-fact shall deduct only the following items from monthly gross income to arrive at monthly net income:
>
> (i) federal, state, and local income taxes;
>
> (ii) unemployment compensation taxes and Local Services Taxes (LST);
>
> (iii) F.I.C.A. payments (Social Security, Medicare and Self-Employment taxes) and non-voluntary retirement payments;
>
> (iv) mandatory union dues; and
>
> (v) alimony paid to the other party.

Pa.R.C.P. 1910.16-2(c)(1).

With these principles in mind, we turn to the substance of Father's appeal. We address contemporaneously Father's first three appellate issues, as they all pertain to the trial court's treatment of Father's flow-through income. Both the trial court and Father agree this case is governed by **Fennell v. Fennell**, 753 A.2d 866 (Pa. Super. 2000), but they differ on how **Fennell** should be applied.[3]

In **Fennell**, the mother sought child support from the father. The question was whether the father's flow-through income should be included when calculating his monthly net income. On his tax return, the father

_____

[3] Mother chose not to submit an appellee brief.

reported flow-through income from a company called Muscle Products, in which the father owned a minority stake. Muscle Products was a Subchapter S corporation, meaning that just like the businesses in the instant case, Muscle Products could elect to avoid tax at the corporate level by requiring individual shareholders to pay tax on corporate earnings. Muscle Products did not distribute its corporate earnings to the father; instead, the company retained the father's share of its earnings and reinvested it in the company. The father never received Muscle Products profit in cash for his personal use. None of that made much difference to the Internal Revenue Service, of course, which still required the father to report the income on his personal tax return. *See generally Fennell*, 753 A.2d at 867.

The issue in *Fennell* was whether, for child support purposes, the father's net income should include his share of corporate earnings, even though he did not actually take home any of that income. The trial court acknowledged that the father owned only a minority interest in the corporation, and it also agreed with the father that the corporation's decision to retain the father's earnings was a "business decision" – *i.e.*, to grow or preserve the company. *Id.* Importantly, "[t]here was no finding…that the retention of earnings in Muscle Products in any way constituted an effort to shield income from Father's support obligation." *Id.* Still, the trial court included the father's share of the corporate earnings in its child support calculations, despite Muscle Products retention of those earnings. *Id.* at 867-868. The father appealed, and we concluded the trial court erred.

We recognized that "all benefits flowing from corporate ownership must be considered in determining income available to calculate a support obligation." *Id.* at 868 (citations omitted). "[T]he owner of a closely-held corporation cannot avoid a support obligation by sheltering income that should be available for support by manipulating salary, perquisites, corporate expenditures, and/or corporate distributions amounts." *Id.* "By the same token, however, we cannot attribute as income funds ***not actually available*** to or received by the party." *Id.* (emphasis added).

Because the father did not actually receive corporate distributions, nor did the father have the ability to control whether the company would issue distributions or retain its earnings, we concluded that the trial court erred when it considered that income. *Id.* at 869. We clarified, however, that our holding did "not create a presumption that corporate retained earnings *per se* are to be excluded from available income for purposes of support calculations." *Id.* (footnote omitted). Rather, "in situations where the individual with the support obligation ***is able to control*** the retention or disbursement of funds by the corporation, he or she still will bear the burden of proving that such actions were 'necessary to maintain or preserve' the business." *Id.* (emphasis added) (citation omitted).

Notably, Judge Del Sole dissented from the Majority's decision. Judge Del Sole explained that while he agreed retained corporate earnings may not always be considered income for support, he reasoned that it was the burden of the party seeking exclusion to convince the court. Judge Del Sole would

have affirmed the trial court, because the trial court was not persuaded by the father's argument. *See id.* (Dissenting Opinion).

Returning to the instant case, the trial court and Father disagree over a party's burden of proof regarding the party's control over the business funds. Father argues he met his burden, merely by showing that he was a minority owner in each business. Conversely, the trial court determined Father did not meet his burden, because the hearing officer found Father's testimony and evidence lacked credibility. *See* Trial Court Opinion (T.C.O.), 3/30/21, at 12. The trial court opined:

> Father did not meet his burden in proving his inability to control the retention or disbursement of earnings of all these entities. Instead, Father's focus during the hearing was his simple assertion that he did not receive the K-1 [*i.e.*, the flow-through] income, per se, just the amount to pay taxes. However, this falls far short of the requirement that he provide detailed evidence to back up this claim. The [hearing] officer correctly proceeded to determine Father's income based on what was presented. [The trial court] will not substitute the credibility determinations or the judgment on this point for that of the hearing officer.

*Id.* (footnote omitted, capitalization adjusted).

The trial court went on to explain that, although the hearing officer's report and recommendation were only advisory, they should be given the fullest consideration, especially on the issue of witness credibility, because the hearing officer had the opportunity to observe and assess the behavior and demeanor of the parties. *Id.* (citing *Gutteridge v. J3 Energy Group, Inc.*, 165 A.3d 908, 916 (Pa. Super. 2017)).

On appeal, Father challenges the trial court's rationale, arguing that the hearing officer never made explicit credibility determinations. Father maintains the trial court only inferred that the hearing officer made an adverse credibility finding, simply because the hearing officer ruled for Mother. Father concludes that the trial court's reliance on such an inference was erroneous.

For support, Father cites **Page's Dept. Store v. Velardi**, 346 A.2d 556, 561 (Pa. 1975). In **Page's Dept. Store**, our Supreme Court held, "[a]n appellate court or other reviewing body should not assume from the absence of a finding on a specific point that the question has been resolved in favor of the party who prevailed below, for the point may have been overlooked or the law misunderstood at the trial or hearing level." **Id.** Father also cites Justice Newman's concurring and dissenting statement in **Daniels v. Worker's Compensation Appeal Board (Tri State Trans.)**, 828 A.2d 1043, 1054-57 (Pa. 2001), which articulates the "very real concern" that a lower court will sometimes seek to insulate its findings from review by designating them as credibility findings.

After review, we agree with Father's position. The trial court improperly inferred that the hearing officer's decision was based on Father's lack of credibility. Apart from a brief accounting of what dollar amounts were used in the support formula, the hearing officer's report and recommendation contained no factual findings, let alone credibility findings. Similarly, our review of the transcript discloses no other testimonial exchange suggesting that the hearing officer had any concern with Father's testimony or evidence.

Father testified what the flow-through income was, where it came from, and how he used the distributed earnings to cover his tax bill. This testimony was neither contested by Mother, nor investigated by the hearing officer. There was no inquiry at all into Father's ability to control whether his various businesses issued distributions, or whether it was the businesses' standing practice to retain earnings. The hearing officer made no finding that Father was attempting to shield his income to avoid paying support.

Contrary to the trial court's view, Father corroborated his testimony with documentation, specially Exhibit D-6. Exhibit D-6 contained the respective K-1 Schedules showing Father's ownership share of the business, the flow-through income for each business, and whether that business issued a distribution. Initially, Father had trouble emailing Exhibit D-6 to the hearing officer, due to the size of the electronic file. The hearing officer allowed Father to fax the documentation after the hearing, at which point the hearing officer said she would review the entire matter.

Based on these facts, the trial court should not have assumed that the hearing officer's decision was predicated on a credibility finding. Father's minority ownerships were only cursorily addressed at the hearing, and not addressed at all in the hearing officer's report. We cannot infer from the hearing officer's silence on this point that she found Father had the ability to control the distribution of corporate earnings, or that Father was shielding his income from his support obligation. After all, one could just as easily infer the

hearing officer "overlooked" or "misunderstood" the law. ***See Page's Dept. Store***, ***supra.***[4]

Still, an error of judgment is not tantamount to an abuse of discretion. ***Silver***, ***supra***. "[T]his Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground." ***Id.*** Rather, "[w]e will not interfere with the broad discretion afforded the trial court" unless there is "insufficient evidence to sustain the support order." ***Id.***

Here, after review, we conclude the record does not sustain the support order. The record only contained Father's testimony and documentation, which discloses the following: Father testified that he owns minority interests in various businesses; and his Exhibit D-6 (the respective K-1 Schedules for each business) identifies his respective ownership interest, his share of the corporate earnings (if any), and the amount of the distribution (if any). ***See*** N.T., at 19. Father's minority interests, across nine businesses, ranged from as little as 2.75% to as much as 28.95%.[5]

_____

[4] For instance, a plausible reading of the cold transcript suggests that the hearing officer failed to understand why an individual would have to claim flow-through income to the IRS, even though the individual did not actually receive of the income. ***See*** N.T., 11/29/19 at 19.

[5] We note that the trial court remarked in its Rule 1925(a) opinion that it appeared the K-1 Schedules were never submitted, and that they did not appear in the record. ***See*** T.C.O. at 3, n.11. However, our review of the record reveals Father abided by the hearing officer's directive and faxed the K-1 Schedules four days after the hearing. Father then included the correspondence and the K-1 Schedules in his exceptions before the trial court. Moreover, it appears the trial court reviewed Father's K-1 Schedules, before opining that the hearing officer's decision should be affirmed. ***See id.*** at 7.

*(Footnote Continued Next Page)*

Father presented uncontested testimony and evidence that he was a minority owner; and there was no finding, nor evidence to support the inference, that the businesses attempted to shield income from Father's support obligation by retaining his earnings instead of distributing them. Therefore, we conclude Father met his burden to prove he had no control over the decision to retain or distribute earnings. **See Fennell**, 753 A.2d at 869.

In his Brief, Father suggests that a minority owner, by definition, cannot control the retention or disbursement of corporate earnings. **See** Father's Brief, at 19. We do not quite go that far. For instance, Mother could have challenged Father's ability to control the distribution of funds, notwithstanding Father's minority ownership; or, the hearing officer could have asked other relevant questions to determine whether Father was shielding his income (e.g., whether Father's partners were similarly treated). In other words, information gleaned from a minority owner's tax return can be questioned. **See, e.g., Labar v. Labar**, 731 A.2d 1252, 1255 (Pa. 1999) ("[I]ncome must reflect actual available financial resources and not the oft-time fictional financial picture which develops as a result of depreciation deductions taken against…income as permitted by the federal income tax laws.") (citation omitted)).

In this case, however, all the court had was Father's testimony and documentation that he was a minority owner. Nothing in the record indicates Father had control over whether the corporate earnings were distributed or

retained. As such, Father had no burden to show that businesses' retention of their earnings were "'necessary to maintain or preserve' the business." *See Fennell*, 753 A.2d at 869. Therefore, the trial court erred by considering the retained portion of Father's flow-through income from his various business ventures.

While Father suggests the court should not have considered *any* of his flow-through income, we disagree. Our clear case law provides that a corporate distribution, even if used to pay a party's tax liability, nevertheless counts as income for purposes of child support calculations. *See Spahr v. Spahr*, 869 A.2d 548, 553 (Pa. Super. 2005); *see also* 23 Pa.C.S.A. § 4302 (defining "income" as "distributive share of partnership gross income*"*). Nevertheless, Father is entitled to relief on his first three issues.

Next, we address Father's final issue. Anticipating that our disposition would necessitate a recalculation of his support obligation, Father seeks to guard against a future error – namely, that the trial court could deviate his guideline obligation upward by 30%. *See generally* Father's Brief at 36-43; *see also* Pa.R.C.P. 1910.16-4 (Explanatory Comment – 2010). [6] Recall that

_____

[6] The 2010 Explanatory Comment to Pa.R.C.P. 1910.16-4 provides, in relevant part:

> The basic support schedule incorporates an assumption that the children spend 30% of the time with the obligor and that the obligor makes direct expenditures on their behalf during that time. Variable expenditures, such as food and entertainment, that fluctuate based upon parenting time were adjusted in the schedule to build in the assumption of 30% parenting time. Upward deviation should be considered in cases in which the obligor has little or no contact with the children. However, an upward

*(Footnote Continued Next Page)*

when the trial court dismissed Father's exceptions, it hypothesized that, even if the hearing officer was wrong to include the flow-through income, the support obligation did not have to be recalculated. The trial court reasoned that the hearing officer could have just as easily deviated Father's obligation upward and reached the same result. On appeal, Father concedes an upward deviation is allowed under the support Rules. His argument is that Explanatory Comment's presumption of 30% custodial time does not mean that the entire support obligation can be deviated upward by 30%.

Because no deviation was imposed in this case, and because we remand for a new calculation, we decline to address this issue. Our role as an error-correcting court "does not include making independent factual determinations." *See, e.g., M.J.M. v. M.L.G.*, 63 A.3d 331, 334 (Pa. Super. 2013). Moreover, "[t]he courts in our Commonwealth do not render decisions in the abstract or offer purely advisory opinions[.]" *Pittsburgh Palisades Park, LLC. V. Com.*, 888 A.2d 655, 659 (Pa. 2005) (citation omitted).

To conclude: the trial court erred when it accepted the hearing officer's recommendation that all of Father's flow-through income, including that portion retained by his various business ventures, should be considered for support purposes. On remand, the trial court may only consider that portion

---

deviation may not be appropriate if an obligor has infrequent overnight contact with the child, but provides meals and entertainment during daytime contact. Fluctuating expenditures should be considered rather than the extent of overnight time.

Pa.R.C.P. 1910.16-4 (Explanatory Comment – 2010).

of Father's flow-through income which was distributed to him. Finally, we decline to issue an advisory opinion regarding the propriety of an upward deviation.

Order vacated in part. Case remanded for proceedings consistent with this Opinion. Jurisdiction relinquished.

President Judge Emeritus Stevens joins this Opinion.

Judge Nichols files a Dissenting Opinion.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date:* *3/17/2022*