J-A26026-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CAROLINE MANN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL MANN | : | |
| | : | |
| Appellant | : | No. 1002 EDA 2020 |

Appeal from the Order Entered March 18, 2020
In the Court of Common Pleas of Northampton County Domestic
Relations at No(s):  No. DR-0101717

BEFORE:   BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:                **FILED JANUARY 06, 2021**

Michael Mann (Husband) appeals, *pro se*, from the order, entered in the Court of Common Pleas of Northampton County on March 18, 2020, finalizing the trial court's July 9, 2019 order of support for the parties' three minor children.  Husband challenges the trial court's calculation of his income for support purposes; he also challenges the calculation of Caroline Mann's (Wife's) income with respect to allowances for childcare expenses.  After our review, we affirm on the basis of the opinion authored by the Honorable Jennifer R. Sletvold.

The parties were married in 2004.  Husband filed a complaint in divorce on May 1, 2017.  On August 4, 2017, Wife filed a complaint seeking alimony *pendent lite* (APL) and support for the parties' three minor children, who were

_____

[*] Former Justice specially assigned to the Superior Court.

then ages two, five and six. Both parties appeared with counsel for a scheduled conference on September 29, 2017.

> [At the conference, Wife] reported being employed full time as a teacher in Clinton, NJ, earning an annual salary of $64,425.00, paid semi-monthly over 10 months. [Wife] reported union dues of $64.55 per pay and a mandatory retirement deduction of $236.44 per pay. [Wife] reported providing health insurance for the children as well as [Husband] at a cost of $351.09 per pay. [Wife] reported costs for a nanny of $10.00 per hour, for an average of 25-35 hours per week. The nanny's contract was for 190 days per year following [Wife's] school schedule. Verification of the nanny's salary was submitted to the Domestic Relations Section ("DRS") via pay stubs paid to the nanny. [Wife] reported an additional childcare expense for one of the children in the amount of $175.00 per month for 3 days a week from 9:00 a.m. to noon, plus an additional $30.00 per month for "Friday Lunch" at the childcare [center].
>
> [Husband, a registered nurse,] reported being employed for 9.5 years full time as a transplant coordinator [for Gift of Life in Philadelphia], earning an average annual base salary of $103,682.00, plus an annual bonus. [Husband] received $76.93 biweekly for waiving his health coverage through his employer. [Husband] also reported owning and operating an automobile customization company, Moto East, LLC, but reported that the business was closing and the assets were being liquidated. Counsel agreed that issues related to Moto East, LLC [Moto East], would be dealt with in equitable distribution. [Husband] also received veteran's benefits in the amount of $589.12 per month.

Trial Court Opinion, 6/9/20, at 1-2.

Thereafter, on November 1, 2017, the Honorable Paula A. Roscioli entered an order directing Husband pay support in the amount of $4,320.00 per month, allocated as follows: $3,130.00 for the basic support of three children, $797.00 for APL, and $393.00 for arrears, effective September 5, 2017. That order took into account Wife's health insurance, and childcare and

nanny expenses, as well as the costs of gymnastics and dance classes for the children. The order also provided that APL was set to terminate on September 4, 2019, unless Wife made a written request to continue APL.

Over the next two years, Husband filed several petitions for support modification and Wife sought continuance of her APL. The trial court's opinion sets forth the procedural history in considerable detail, and we need not repeat it here. *See* Trial Court Opinion, *supra* at 3-10. Ultimately, on March 18, 2020, Judge Sletvold entered an order, which finalized the July 9, 2019 support order. That order provides:

> And now, [this] 9th day of July 2019, [Husband is] ordered to pay $4,923 per month for support effective 03/01/19[,] allocated $3,392 for the support of three children, $1,084 for [APL], and $447 for arrears. [Husband] is responsible for 73% of unreimbursed medical expenses after the annual $250 per dependent deductible has been met. [Wife] is ordered to provide medical insurance coverage. [APL] will terminate on 09/04/19 absent a written request from [Wife] indicating the need for continued support, which must be received by Domestic Relations prior to said termination date. Order takes into consideration [Wife's] childcare costs and preschool costs as permitted in the order of court 01/26/18. [Wife] is directed to notify [Husband] and the Domestic Relations section in writing within 7 days of a reduction in her childcare or preschool costs. Psychiatric/psychological expenses are to be considered through the uncovered medical policy. Order is based on [Husband's] 2018 federal income tax return. In the event health insurance cover[age] for the dependents on the order terminates, both parties are responsible to provide insurance if available at a reasonable cost. All other contingencies of the order of court dated 01/26/18 remain in full force and effect.

Order, 7/9/19.

Husband filed a timely appeal and a praecipe for self-representation and withdrawal of current counsel. On April 15, 2020, the trial court entered an order directing Husband to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) within twenty-one days. Husband filed his timely Rule 1925(b) statement on May 1, 2020. He now presents the following issues for our review:

> 1. Did the Honorable Court err in assessing an additional $3,385 in monthly income to [Husband] without taking into consideration legitimate business expenditures, tax implications, funds availability, and subsequent payments to [Husband]?
>
> 2. Did the Honorable Court err by assigning vehicles exclusively used for business purposes as available income to [Husband], and assess capital expenditures as income that would later be attributed to the business as equipment/vehicle sales, thus double counting income?
>
> 3. Did the Honorable Court place too heavy of a burden on [Husband] with a $4,923 monthly ordered amount based on a fictitious picture of the business, thus placing him in excess debt and without enough income for basic sustenance?
>
> 4. Did the Honorable Court wrongfully allow [Wife] to claim childcare expenses in excess of what is needed?

Appellant's Brief, at 2-3.

Following is our well-settled standard of review and applicable principles of law with respect to a support order:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of [that] discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the

judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.  In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*Silver v. Pinskey*, 981 A.2d 284, 291 (Pa. Super. 2009) (citation and quotation marks omitted).  "The assessment of the credibility of witnesses is within the sole province of the trial court."  *Calabrese v. Calabrese*, 682 A.2d 393, 395 (Pa. Super. 1995).

"An award of support, once in effect, may be modified via petition at any time, provided that the petitioning party demonstrates a material and substantial change in [his or her] circumstances warranting a modification."  *Plunkard v. McConnell*, 962 A.2d 1227, 1229 (Pa. Super. 2008), citing 23 Pa.C.S.A. § 4352(a) ("A petition for modification of a support order may be filed at any time and shall be granted if the requesting party demonstrates a substantial change in circumstances.") and Pa.R.C.P. 1910.19.

Rule 1910.19 provides:

Pursuant to a petition for modification, the trier-of-fact may modify or terminate the existing support order in any appropriate manner based on the evidence presented without regard to which party filed the petition for modification. If the trier-of-fact finds that there has been a material and substantial change in circumstances, the order may be increased or decreased based on the parties' respective monthly net incomes, consistent with the support guidelines, existing law, and Pa.R.C.P. [] 1910.18(d), and the party's custodial time with the child at the time the modification petition is heard.

Pa.R.C.P. 1910.19(c). "The burden of demonstrating a material and substantial change rests with the moving party, and the determination of

- 5 -

whether such change has occurred in the circumstances of the moving party rests within the trial court's discretion." ***Plunkard***, 962 A.2d at 1229 (citations and internal quotation marks omitted).

Husband first argues that the trial court erred in calculating his income, assessing an additional $3,385.00 per month "without taking into consideration legitimate business expenditures, tax implications, funds availability, and subsequent payments to [Wife]." Appellant's Brief, at 13. ***See also*** Pa.R.A.P. 1925(b) Statement, at ¶ 2. With respect to this claim, the trial court found Husband's testimony unconvincing. Moreover, the documents Husband presented to support this claim, including profit and loss statements, were not certified by an accountant. The court noted that the domestic relations section (DRS) accountants reviewed Husband's business tax return for 2018 and determined that

> [Husband] had total [monthly] disposable income of $3,385.69 from his new company. Husband did not convince the court otherwise. [Husband's] personal tax returns reflected monthly disposable income of $7,162.24. Combining these amounts with [Husband's] $600 in VA benefits, DRS properly calculated [Husband's] adjusted monthly net income to be $11,480.00 for child support calculation purposes.

***Id.*** at 18. We find no error or abuse of discretion. ***Silver***, ***supra***. ***See*** Trial Court Opinion, 6/9/20, at 15-17 (depreciation and depletion expenses should be deducted from gross income only where they reflect actual reduction in personal income of party seeking claimed deductions).

In his second issue, Husband claims that the trial court erred in including $1,044.00 as income, arguing that this depreciation claim for a truck was actually an "expenditure[]" and since 2018 "was the first year of operation of this business, any claimed depreciation must, by operation of logic, be an actual outlay of money invested into the business[.]" Appellant's Brief at 20. Thus, he argues, "$1,044 ($8,349 divided by 8 months of operation of the business in 2018), should be removed from his assessed additional monthly income." *Id.* He also claims "$8,000-$9,000 of the income attributed" to him was held by the company (Xero Limit, Inc.) as inventory, and was "not cash flow" available to him. *Id.* These claims are meritless. The trial court found Xero Limit was not a start-up or new business, but rather a continuation of his former business, Moto East, under a new name. Moreover, Husband at no time "provided expert testimony or other authority in support of his allegations that he was required to maintain a certain inventory or retain earnings for potential chargebacks as he testified in his deposition." Trial Court Opinion, *supra* at 17. Further, the court found Husband used the truck for personal use, and, although depreciation was an allowable expense on an income tax return, it did not result in a loss of cash flow to the business. *See McAuliffe v. McAuliffe*, 613 A.2d 20, 22 (Pa. Super. 1992) ("Depreciation and depletion expenses that are allowed under federal income tax law will not automatically be deducted from gross income for the purpose of determining support responsibilities."); *Flory v. Flory*, 527 A.2d 155, 157 (Pa. Super. 1987) (trial court erred by calculating father's income based on income reported on tax

return alone; "[f]ederal income tax law permits deductions that may not reduce a parent's disposable income.").

Next, Husband claims the trial court's order requiring him to pay support, APL, and arrears in the amount of $4,923.00 "places too heavy a burden" on him. Appellant's Brief, at 25. Husband essentially claims his support obligation is too high. We find no error or abuse of discretion. **See** Trial Court Opinion, **supra** at 19 ("[T]he parties' incomes were established following review of the file, all documents submitted, the parties' testimony, and the DRS accountant's review of the parties' tax returns[;] the [c]ourt followed the [child support] guidelines and formulas set forth in the [Pennsylvania Rules of Civil Procedure 1910.16-1 through 1910.16-7] to enter the July 9, 2019 [o]rder setting [Husband's] support obligation.").

Finally, Husband claims the trial court erred in calculating Wife's childcare expenses, claiming the expenses were "unsupported" and "in excess of what was needed." Appellant's Brief, at 29. Husband claims that he was available for childcare duties, and thus part of the childcare expense was unnecessary. Not only is this belied by the record, as the childcare expenses were properly documented, but in his petition Husband sought modification based on decreased earnings, not based on childcare expenses, and, as Husband testified, he travels for his current job and is sometimes gone for a week at a time. There was no proof Husband was available for childcare beyond that which is set forth in the parties' custody order. Accordingly, this claim is meritless. **See** Trial Court Opinion, **supra** at 23 ("The childcare

expenses were properly calculated, supported by the required documentation and properly utilized in the calculation of [Husband's] support obligation.").

Based on the foregoing, and after reviewing the certified record and relevant case law, we discern no abuse of discretion in the trial court's rationale and calculation of Husband's income and support obligation. We also find no abuse of discretion in the court's calculation of Wife's income and expenses. Accordingly, we decline to disturb the trial court's order of support. *Silver*, *supra*. We affirm the trial court's order, and we direct the parties to attach a copy of Judge Sletvold's opinion in the event of further proceedings.

Order affirmed.


*Judgment Entered.*

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/6/2021

IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY
COMMONWEALTH OF PENNSYLVANIA
DOMESTIC RELATIONS SECTION

| | | |
|---|---|---|
| CAROLINE MANN, | ) | No: DR-101717 |
| Plaintiff | ) | PASCES No.: 867116677 |
| v. | ) | Sup. Ct. No.: 1002 EDA 2020 |
| | ) | |
| MICHAEL MANN, | ) | |
| Defendant | ) | |

## PENNSYLVANIA RULE OF APPELLATE PROCEDURE 1925(a) STATEMENT

AND NOW, this $\frac{9th}{}$ day of June, 2020, the Court issues the following statement

pursuant to Pa.R.A.P. No. 1925(a):

### Procedural History

This matter is before the Superior Court on Defendant's appeal of our Order of

Court dated March 18, 2020.

On August 24, 2017, Plaintiff, Caroline Mann, filed a Complaint for Support

against Defendant, Michael Mann, to establish support for three (3) children. See

Complaint for Support, *Mann v. Mann*, DR-101717 (C.P. Northampton 8/24/2017). The

parties were ordered to appear at a conference to occur on September 29, 2017. On

September 6, 2017, counsel for Plaintiff filed a Complaint for Alimony Pendente Lite.

See Amended Complaint, *Mann, supra.* (C.P. Northampton 9/5/2017).[1]

The parties appeared with counsel for the scheduled conference. See Summary of

Trier of Fact, *Mann, supra.* (C.P. Northampton 10/2/2017). Plaintiff reported being

employed full time as a teacher in Clinton NJ, earning an annual salary of $64.425.00,

---

[1] Plaintiff's Complaint for Alimony Pendente Lite was contained in her Answer and Counterclaim filed in the parties' divorce action, which was then filed with the Domestic Relations Section ("DRS") in the instant support matter.

6/09/2020 Original to Docketing
XC: The Honorable Jennifer R. Sletvold
Lisa Yany Veiszlemlein (DRS Director)
Michael Mann
Caroline Mann
Bruce A. Thomas, ESQ
Office Supervisor          Mailed: 6/12/2020

1

paid semi-monthly over 10 months. *Id.* Plaintiff reported union dues of $64.55 per pay and a mandatory retirement deduction of $236.44 per pay. *Id.* Plaintiff reported providing health insurance for the children as well as Defendant at a cost of $351.09 per pay. *Id.* Plaintiff reported costs for a nanny of $10.00 per hour, for an average of 25-35 hours per week. *Id.* The nanny's contract was for 190 days per year following Plaintiff's school schedule. *Id.* Verification of the nanny's salary was submitted to the Domestic Relations Section ("DRS") via pay stubs paid to the nanny. *Id.* Plaintiff reported an additional childcare expense for one of the children in the amount of $175.00 per month for 3 days a week from 9:00 a.m. to noon, plus an additional $30.00 per month for "Friday lunch" at the childcare. *Id.*

Defendant reported being employed for 9.5 years full time as a transplant coordinator, earning an average annual base salary of $103,682.00, plus an annual bonus. *Id.* Defendant received $76.93 biweekly for waiving his health coverage through his employer. *Id.* Defendant also reported owning and operating an automobile customization company, Moto East, LLC, but reported that the business was closing and the assets were being liquidated. *Id.* Counsel agreed that issues related to Moto East, LLC would be dealt with in equitable distribution. *Id.* Defendant also received veteran's benefits in the amount of $589.12 per month. *Id.*

On November 1, 2017, the Honorable Paula A. Roscioli entered an Order of Court directing Defendant to pay monthly support in the amount of $4,320.00, allocated $3,130.00 for the basic support of 3 children, $797.00 for alimony pendente lite ("APL") and $393.00 for arrears, effective September 5, 2017. See Order of Court, *Mann, supra.* (C.P. Northampton 11/6/2017). The Order also noted that from August 24, 2017 through

2

September 4, 2017, the Order was for child support only in the amount of $3,130.00 per month for the basic support of the three (3) children. *Id*. The Order took into account Plaintiff's health insurance, childcare and nanny expenses, as well as the costs of gymnastics and dance for the children. *Id*. APL was set to terminate on September 4, 2019 absent written request from Plaintiff to continue APL. *Id*.

On November 13, 2017, Defendant filed a written demand for a de novo hearing. The parties were ordered to appear at a hearing to occur on January 24, 2018. See Order of Court, *Mann*, *supra*. (C.P. Northampton 11/21/2018). The parties appeared for the hearing on January 24, 2018, and on January 26, 2018, the Honorable Samuel Murray entered an Order of Court setting Defendant's support obligation for the period of August 24, 2017 through September 4, 2017 at $2,781.00 per month for the basic support of the 3 children. See Order of Court, *Mann*, *supra*. (CP. Northampton 1/26/2017). Effective September 5, 2017, Defendant was directed to pay $3,550.00 per month, allocated $2,781.00 for basic support of the children, $445.00 for alimony pendente lite, and $324.00 on arrears. *Id*. The Order was based on a net monthly income for Defendant of $7,676.00, which included Defendant's gross wages of $9,053.00, $589.00 veteran's disability, and a $9,000.00 bonus annualized over 12 months. *Id*. The Order was based on Plaintiff's monthly net income of $3,413.00, which was calculated from her net annual salary of $64,425.00, a union dues deduction of $108.00 per month, and a mandatory pension deduction of $394.00 per month. *Id*. The Order took into account Plaintiff's nanny expense of $950.00 per month and a preschool expense for one child in the amount of $175.00 per month for nine (9) months, annualized. Plaintiff's request for contribution toward other extracurricular expenses was denied. *Id*. By agreement, Defendant was

3

credited $2,209.56 for a direct mortgage payment. *Id.*

On May 25, 2018, Defendant filed a Petition for Modification seeking to reduce his support obligation as a result of a decrease in income and a change in his tax filing status. On June 5, 2018, the parties were ordered to appear at a modification conference to occur on July 9, 2018.

The parties appeared at the DRS with counsel on July 9, 2018 for the scheduled modification conference. See Alimony Pendente Lite Conference Notes, *Mann, supra.* (C.P. Northampton 7/9/2018). Defendant reported being employed as a transplant coordinator with a bi-weekly gross salary of $4,224.23. *Id.* Defendant also reported receipt of a $3,500.00 Christmas bonus. *Id.* Defendant's income was established via paystubs submitted at the conference. *Id.* Defendant reported that while his prior business was closed in 2017, he engaged in online tuning of computers for cars and generated approximately $20,000.00 in sales in 2017. *Id.* At the time of conference, Defendant's 2017 tax returns were on extension. *Id.* The DRS conference officer advised Defendant that he had one (1) week from the date of conference to provide an accountant- certified profit and loss statement for his 2017 personal and business tax returns. *Id.*

Plaintiff remained employed as a schoolteacher, with an annual salary of $64,425. *Id.* Plaintiff was responsible for a pension contribution of $236.44 per pay and union dues of $64.55 per pay. *Id.* Plaintiff continued to provide health insurance for all of the parties to the action at a cost of $381.71 per pay. *Id.* Plaintiff reported the costs of the nanny, who was compensated at $12.00 per hour for approximately 30-35 hours per week during the school year. *Id.* Plaintiff also reported a preschool cost of $120.00 per month

4

from September through May for one child. *Id.* Defendant agreed that the cost of the nanny was appropriate. *Id.* Plaintiff was given one (1) week to provide a notarized statement regarding the cost of the nanny and the contract of the preschool expense. *Id.*

The issue of counseling costs for one of the children was discussed. *Id.* There was no agreement as to contribution to the costs of counseling, however, Defendant acknowledged he signed a consent for treatment with the psychologist. *Id.* Plaintiff was granted a week to submit a letter from the psychologist indicating the necessity of the treatment sessions. *Id.* The DRS conference officer noted that all issues related to Defendant's business and any joint debts were to be addressed in the parties' divorce. *Id.*

Between the time of the conference and July 18, 2018, Plaintiff submitted to DRS an updated notarized contract for the nanny, as well as verification of preschool enrollment for one child at the cost of $120.00 per month. See Alimony Pendente Lite Follow-Up Notes, *Mann, supra.* (C.P. Northampton 7/18/2018). The conference officer noted that in the January 26, 2018 Order, Judge Murray had previously allowed a preschool expense for one of the other children of this matter, and concluded, therefore, that it would be an allowable for expense for the parties' youngest child as well. *Id.* The conference officer received confirmation from Plaintiff's employer that a life insurance deduction reflected on her paystubs was mandatory. *Id.* The conference officer also received correspondence from the child's psychologist indicating that one of the children attended therapy sessions from April 2017 through June 14, 2018, but that therapy is no longer needed. *Id.* The conference officer determined that since Defendant did sign the consent to treat, he would be liable for his proportionate share through the uncovered medical policy. *Id.*

5

Plaintiff was determined to have an average monthly gross income of $5,567.00, with an adjusted monthly net of $4,034.00, based upon her annual salary, less the mandatory pension, life insurance and union dues, along with an increase of $198.42 as a result of the child tax and earned income credits. *Id.* Defendant was determined to have an average monthly gross income of $10,044.00 and an adjusted monthly net income of $7,378.00, derived from his base salary, annual Christmas bonus, and VA benefits reported to be $600.00 per month. *Id.*

On July 18, 2018, the Honorable Paula Roscioli entered an Order directing Defendant to pay support in the amount of $3,225.00 per month, allocated $177.00 for APL, $2,755.00 for support of the 3 children, and $293.00 on arrears. See Order of Court, *Mann*, *supra*. (C.P. Northampton 7/20/2018). Defendant was determined to be responsible for 65% of unreimbursed medical expenses after the $250.00 annual deductible per dependent has been met. *Id.* Plaintiff's childcare and preschool costs were considered. *Id.* The Order noted that Psychiatric and Psychological expenses were to be considered through the uncovered medical provisions of the Order. *Id.* All other contingencies of the January 26, 2018 Order remained in full force and effect. *Id.*

On May 17, 2019, Defendant filed a Petition for Modification seeking to reduce his support obligation as a result of Plaintiff allegedly no longer paying his health insurance costs. See Petition for Modification, *Mann*, *supra*. (C.P. Northampton 5/17/2019). The parties were ordered to appear at modification conference to occur on June 17, 2019. The parties appeared with counsel at DRS for the June 17, 2019 conference. See Conference Notes, *Mann*, *supra*. (C.P. Northampton 6/17/2019). The parties agreed to a retroactive effective date of March 1, 2019 for a modified Order of

6

Support as a result of Plaintiff no longer paying Defendant's health insurance costs. *Id.* Plaintiff's income was reviewed, along with the mandatory retirement. life insurance and union dues. *Id.* Plaintiff's Federal Income Tax return was submitted for review. *Id.* Defendant's income was also reviewed. *Id.* Defendant received a bi-weekly salary in the amount of $4,342.23 for full time work, with no union dues or retirement deductions. *Id.* Defendant reported receiving a $4,000.00 Christmas bonus. *Id.* Defendant reported no longer receiving the additional payment for waiving his employer's health insurance as he began utilizing that coverage. *Id.* No consideration was given for Defendant's company car. *Id.* On questioning from opposing counsel, Defendant indicated that he had opened a new business, "Xero Limit", that did the same type of work as the prior business that had been closed and dealt with in equitable distribution. *Id.* At the conference, Defendant was "not forthcoming regarding his income" and did not have his business income tax return. *Id.* Defendant was directed to submit his business tax return, along with an accountant-certified profit and loss statement within fourteen (14) days of the conference. *Id.* The parties both had insurance costs, which were to be considered in the support calculation. *Id.* Plaintiff continued to incur the nanny and preschool costs. *Id.* As in the previous Order, no consideration was to be given for additional extracurricular expenses. *Id.*

Following the conference, Defendant submitted his 2018 business tax return, and both parties' tax returns were submitted to the DRS accountants for review. See July 9. 2019 Follow-Up Notes, *Mann, supra.* (C.P. Northampton 7/9/2019). Defendant submitted a profit and loss statement, however, it was not accountant certified, so it was not considered by DRS. *Id.* The conference officer noted that, while the parties agreed

7

that Defendant's prior business would be dealt with in equitable distribution, there was no agreement as to the current business, so Defendant's income from the business, "Zero Limit", would be prorated over the 8 months in 2018 that the business was open. *Id.* Defendant was determined to have monthly disposable income from the company totaling $3,585.69, along with $7,162.00 monthly disposable income as reflected in his personal tax return. *Id.* When added to his $600.00 per month VA benefits, Defendant's adjusted monthly net income totaled $11,148.00, based on his tax-filing status. *Id.* The support calculation was run utilizing the parties' net incomes, considering Plaintiff's childcare expenses and the parties' health insurance premiums. *Id.* As per the Uniform Support Guidelines, the conference officer determined Defendant's support obligation to be $4,476.00 per month, allocated $3,392.00 for the support of the three children and $1,084.00 for APL with an additional 10% towards arrears. *Id.*

On July 8, 2019, counsel for Plaintiff filed a request for continued APL. The parties were ordered to appear at a complex/separate listing hearing to occur on August 12, 2019. See Order of Court, *Mann, supra.* (C.P. Northampton 7/12/2019).

On July 9, 2019, Judge Roscioli entered an Order directing Defendant to pay $4,923.00 per month for support, effective March 1, 2019, allocated $3,392.00 per month for the support of 3 children, $1,084.00 for APL, and $447.00 for arrears. See Order of Court, *Mann, supra.* (C.P. Northampton 7/11/2019). Defendant was determined to be responsible for 73% of unreimbursed medical expenses after the annual $250.00 per dependent deductible was met. *Id.* Plaintiff was ordered to provide medical insurance for the children. *Id.* APL was set to terminate on September 4, 2019 absent written request to continue APL from Plaintiff. *Id.* The Order indicated that the childcare and

8

preschool costs permitted in the January 26, 2018 Order were taken into account, and that the psychiatric and psychological expenses were to be considered through the uncovered medical provisions of the Order. *Id.* The Order was based on Defendant's 2018 Federal Income Tax Return. *Id.* All other contingencies of the January 26, 2018 Order remained in full force and effect. *Id.*

On July 16, 2019, Defendant filed a written demand for a de novo hearing as to the July 9, 2019 Order. On July 19, 2019, correspondence was sent by the DRS to the parties/counsel indicating that Defendant's objections to the July 9, 2019 Order and Plaintiff's request for continued APL would be heard at the August 12, 2019 hearing. The August 12, 2019 hearing was subsequently continued to September 18, 2019.

On September 18, 2019, the parties appeared before the Court. Also on September 18, 2019, Defendant filed a Petition for Modification to decrease his support amount due to allegedly decreased earnings. The parties were ordered to appear at a modification conference to occur on November 18, 2019. See Order of Court, *Mann, supra.* (C.P. Northampton 9/19/2019). The parties were subsequently ordered to appear at a rescheduled hearing on November 25, 2019. See Order of Court, *Mann, supra.* (C.P. Northampton 10/4/2019). The parties were directed to submit depositions to DRS within sixty (60) days of the September 18, 2019 hearing. *Id.* The Order also noted that APL was continued, by agreement of the parties, until the November 25, 2019 hearing. *Id.*

On October 15, 2019, a contempt petition was issued against Defendant, and he was scheduled for a contempt hearing to occur on November 5, 2019. At the request of counsel for Defendant, the contempt hearing was continued to November 26, 2019. On November 21, 2019, Judge Roscioli entered an Order indicating that disposition of

9

Defendant's Petition for Modification, filed on September 18, 2019, was being held in abeyance pending a final ruling on Defendant's objection to the Order of Court dated July 9, 2019. See Order of Court, *Mann, supra.* (C.P. Northampton 11/21/2019). The July 9, 2019 Order remained in full force and effect, and Defendant remained listed for the November 26, 2019 session of non-compliance Court. *Id.*

On November 22, 2019, at the request of counsel for Defendant, the November 25, 2019 hearing on the Defendant's objection to the July 9, 2019 Order and Plaintiff's request to continue APL was continued to January 16, 2020. The hearing was subsequently rescheduled to February 10, 2020.

On November 26, 2019, the undersigned entered an Order finding Defendant in contempt of the support Order in this matter. See Order of Court, *Mann, supra.* (C.P. Northampton 11/27/2019). Defendant was sentenced to a 6-month period of probation. *Id.* Defendant was ordered to appear before the undersigned on February 11, 2020 to review compliance with the terms of probation. *Id.*

On January 10, 2020, the parties filed a Petition for Review to Reinstate Alimony Pendente Lite Effective November 25, 2019, by written agreement of parties' counsel pending the hearing scheduled for February 10, 2020. Also on January 10, 2020, Judge Roscioli entered an Order of Court directing Defendant to pay $4,923.00 per month for support, effective November 25, 2019, allocated $4,476.00 for basic support of Plaintiff and the 3 children and $447.00 for arrears. See Order of Court, *Mann, supra.* (C.P. Northampton 1/10/2020). Arrears were set at $18,606.63 as of the date of the Order. *Id.* Defendant remained responsible for 73% of unreimbursed medical expenses above the $250.00 per dependent deductible. APL was reinstated effective November 25, 2019 per

10

agreement of the parties and would terminate on February 10, 2020 pending the scheduled the hearing. *Id.* The November 26, 2019 and July 9, 2019 Orders remained in full force and effect, and Defendant remained under the terms of probation issued in the November 26, 2019 Order. *Id.*

On February 10, 2020, the parties appeared before the undersigned for the scheduled hearing on Defendant's Objections to the July 9, 2019 Order and Plaintiff's request to continue APL. Also on February 10, 2020, Defendant was removed from the February 11, 2020 non-compliance Court hearing list as a result of regular payments being received. On February 27, 2020, the undersigned entered an Order of Court directing that APL would continue in accordance with the July 9, 2019 Order pending final decision of the parties' divorce action, per agreement of counsel. See Order of Court, *Mann*, *supra.* (C.P. Northampton 3/3/2020). We noted that the transcript of Defendant's deposition was submitted at the February 10, 2020 hearing and that the parties were to submit briefs as directed. *Id.* All other stipulations in the July 9, 2019 Order remained in full force and effect. *Id.*

On March 4, 2020, DRS filed a Petition for Review to Revoke Defendant's Probation and to list Defendant for a review hearing. Defendant was scheduled for a contempt hearing to occur on March 17, 2020. On March 17, 2020, Judge Roscioli entered an Order to freeze assets that was issued to Branch Banking and Trust Company as to Defendant's accounts.

On March 18, 2020, the undersigned entered the Order of Court currently on appeal, making the July 9, 2019 Order final. See Order of Court, *Mann*, *supra.* (C.P. Northampton 3/19/2020). In accordance with the November 21, 2019 Order, Defendant's

11

Petition for Modification, filed September 18, 2019, which had been held in abeyance, was referred to DRS for further disposition. *Id.* All other stipulations in the July 9, 2019 Order and February 27, 2020 Order remained in full force and effect. *Id.*

On April 13, 2020, Defendant filed his Notice of Appeal of our March 18, 2020 Order. See Notice of Appeal, *Mann, supra.* (C.P. Northampton 4/13/2020). Defendant also filed a Praecipe for Self Representation and withdrawal of current counsel. See Praecipe for Self Representation, *Mann, supra.* (C.P. Northampton 4/13/2020). On April 15, 2020, the undersigned entered an Order directing Defendant to file a Statement of Errors Complained of on Appeal within 21 days, which was specifically noted to be May 6, 2020. See Order of Court, *Mann, supra.* (C.P. Northampton 4/15/2020). On May 1, 2020, Defendant filed his Statement of Errors Complained of On Appeal, averring as follows:

> 1) Did the Honorable Court err in assessing an additional $3,385 in monthly income to Mr. Mann without taking into consideration legitimate business expenditures, tax implications, funds availability, and subsequent payments to the appellant?
>
> 2) Did the Honorable Court err by assigning vehicles exclusively used for business purposes as available income to the appellant, and assess capital expenditures as income that would later be attributed to the business as equipment/vehicle sales, thus double counting income?
>
> 3) Did the Honorable Court place too heavy of a burden on the appellant with a $4,923 monthly ordered amount based on a fictitious picture of the business, thus placing him in excess debt and without enough income for basic sustenance?
>
> 4) Did the Honorable Court wrongfully allow mother to claim unsupported childcare expenses in excess of what is needed?

12

See Defendant's Statement of Errors, *Mann, supra.* (C.P. Northampton 5/1/2020).

## Standard of Review

It is well established that the Superior Court's scope of review is limited in child support cases. See *Haley v. Haley*, 549 A.2d 1316, 1317 (Pa. Super. 1988). It is within the trial court's discretion to determine the amount of a child support order, and its judgment should not be disturbed on appeal absent a clear abuse of discretion. *Id.*, quoting *Ritter v. Ritter*, 518 A.2d 319, 322 (Pa. Super. 1986). "'On appeal, a trial court's child support order will not be disturbed unless there is insufficient evidence to sustain it or the court abused its discretion in fashioning the award.'" *Id.*, quoting *Fee v. Fee*, 496 A.2d 793, 794 (Pa. Super. 1985) (internal punctuation omitted). The Pennsylvania Supreme Court has stated as follows:

> "Abuse of discretion" is synonymous with a failure to exercise a sound, reasonable, and legal discretion. It is a strict legal term indicating that [an] appellate court is of opinion that there was commission of an error of law by the trial court. It does not imply intentional wrong or bad faith, or misconduct, nor any reflection on the judge but means the clearly erroneous conclusion and judgment—one that is clearly against logic and effect of such facts as are presented in support of the application or against the reasonable and probable deductions to be drawn from the facts disclosed upon the hearing; and improvident exercise of discretion; and error of law.

*McKolanis v. McKolanis*, 644 A.2d 1256 (Pa. Super. 1994), citing *Com. v. Powell*, 527 Pa. 288, 297 n.8, 590 A.2d 1240, 1244 n.8 (1991). A finding of abuse of discretion will be made only upon a showing of clear and convincing evidence. *Koller v. Koller*, 481 A.2d 1218 (Pa. Super. 1984). The role of an appellate Court in support proceedings is limited and a finding of abuse of discretion should not be made lightly. See *Haley*, 549 A.2d at 1317, citing *Hartley v. Hartley*, 528 A.2d 233 (Pa. Super. 1987); see also *Shindel*

13

*v. Leedom*, 504 A.2d 353 (Pa. Super. 1986).

## Discussion

It is respectfully submitted that Defendant's appeal is without merit and should be dismissed.

As set forth above, Defendant has raised four (4) alleged errors on his appeal. The first three (3) of Defendant's alleged errors deal with the calculation of his income for support obligation purposes. The fourth alleged error addresses the calculation of Plaintiff's income, specifically the nanny and preschool expenses.

Pennsylvania Rule of Civil Procedure 1910.16-2, titled "Support Guidelines. Calculation of Monthly Net Income" provides as follows:

> Generally, the support amount awarded is based on the parties' monthly net income.
>
> **(a) Monthly Gross Income.** Monthly gross income is ordinarily based on at least a six-month average of a party's income. The support law, 23 Pa.C.S. § 4302, defines the term "income" and includes income from any source. The statute lists many types of income including, but not limited to:
>
> (1) wages, salaries, bonuses, fees, and commissions;
> (2) net income from business or dealings in property;
> (3) interest, rents, royalties, and dividends;
> (4) pensions and all forms of retirement;
> (5) income from an interest in an estate or trust;
> (6) Social Security disability benefits, Social Security retirement benefits, temporary and permanent disability benefits, workers' compensation, and unemployment compensation;
> (7) alimony if, in the trier-of-fact's discretion, inclusion of part or all of it is appropriate; and
> (8) other entitlements to money or lump sum awards, without regard to source, including:
> (i) lottery winnings;
> (ii) income tax refunds;
> (iii) insurance compensation or settlements;
> (iv) awards and verdicts; and

14

(v) payments due to and collectible by an individual regardless of source.

Pa.R.C.P. No. 1910.16-2(a) (emphasis in original). This rule further provides as follows:

**(c) Monthly Net Income.**

(1) Unless these rules provide otherwise, the trier-of-fact shall deduct only the following items from monthly gross income to arrive at monthly net income:
(i) federal, state, and local income taxes;
(ii) unemployment compensation taxes and Local Services Taxes (LST);
(iii) F.I.C.A. payments (Social Security, Medicare and Self-Employment taxes) and non-voluntary retirement payments;
(iv) mandatory union dues; and
(v) alimony paid to the other party.

Pa.R.C.P. No. 1910.16-2(c) (emphasis in original). Rule 1910.16-2(a) makes it clear that

a party may have multiple sources of income that are included in the calculation of a

support obligation.

## I. Defendant's business income was properly calculated and utilized in establishing his support obligation.

Defendant's first alleged error is that we erred in "assessing" him an additional

$3,385.00 in monthly income without taking into consideration legitimate business

expenditures, tax implications, funds availability, and subsequent payments to the

appellant. See Statement of Errors at ¶ 1. Defendant then alleges that we erred by

assigning vehicles exclusively used for business purposes as available income to the

appellant and assessing capital expenditures as income that would later be attributed to

the business as equipment/vehicle sales, thus double counting income. See Statement of

Errors at ¶ 2. These alleged errors are without merit.

As noted in the DRS Conference Officer's July 9, 2019 Follow-Up Notes, the

15

DRS accountants reviewed Defendant's personal and business tax returns to determine his monthly disposable income. See Follow-Up Notes, *Mann, supra.* (C.P. Northampton 7/9/2019). After that review of Defendant's tax returns by the DRS accountants, the conference officer determined that Defendant had total disposable income of $3,385.69 from his company, Xero Limit Incorporated. *Id.*

In *Cunningham v. Cunningham*, 548 A.2d 611 (Pa. Super. 1988), the Superior Court stated as follows:

> It is well established that depreciation and depletion expenses, permitted under federal income tax law without proof of actual loss, will not automatically be deducted from gross income for purposes of determining awards of alimony and equitable distribution. In determining the financial responsibilities of the parties to a dissolving marriage, the court looks to the actual disposable income of the parties . . . Depreciation and depletion expenses should be deducted from gross income only where they reflect an actual reduction in the personal income of the party claiming the deductions, such as where, e.g., he or she actually expends funds to replace worn equipment or purchase new reserves.

*Cunningham v. Cunningham*, 548 A.2d 611, 612-613 (Pa. Super. 1988) (emphasis added). In the course of his deposition, Defendant testified that he did not take any salary from his business in 2018. See Notes of Transcript (N.T.), Deposition of Michael Mann taken 10/22/2019 at p. 8 (C.P. Northampton 5/8/2020). Defendant testified that several expenditures that were included in the claim for depreciation were actual expenditures. See *Id.* at pp. 11-12. Defendant also testified that $8,000.00 to $9,000.00 of the income attributed to him was being held as inventory, not cash flow available to him. *Id.* at p. 11. Defendant testified the business requires him to retain about $5,000.00 in earnings to cover the possibility of a "chargeback". *Id.* at pp. 8-9. Defendant also testified that the

16

vehicle expenses for the company were solely for business use and should not be added back to his income. *Id.* at pp. 13-14.

Defendant's testimony was unconvincing and self-serving, as was much of the documentation submitted by Defendant, including the profit and loss statement, which was not certified by an accountant and therefore not considered by DRS. Defendant testified that while he did begin operation of Xero Limit in 2018, he had previously been engaged in a similar business. *Id.* at pp. 35-36; Conference Notes, *Mann, supra.* (C.P. Northampton 6/17/2019). Defendant chose to essentially restart the business under a new name, and it did not appear to the Court that Defendant was actually beginning the new business from scratch, as Defendant specifically testified that assets were transferred from the old company to the new company. N.T. at pp. 37-38. Defendant's new company did not appear to the Court as an actual start up business, as claimed by Defendant, but rather a continuation of the old business under a new name. Furthermore, at no point in the course of these proceedings did Defendant provide any expert testimony or other authority in support of his allegations that he was required to maintain a certain inventory or retain earnings for potential chargebacks as he testified in his deposition.

Additionally, the DRS conference officer specifically noted that "[a]s the defendant has a personal vehicle and does not receive income for the use of the company vehicle, no consideration continues to be given for the company vehicle." See Conference Notes, Mann, supra. (6/17/2019). The conference officer also noted that Defendant was not forthcoming regarding his income at the June 17, 2019 conference. *Id.*

The DRS accountants did a full review of Defendant's business tax return for

17

2018 and made the determination that Defendant had total disposable income of $3,385.69 from his new company. Nothing in the record convinced the Court otherwise. Defendant's personal tax returns reflected monthly disposable income of $7,162.24. Combining these amounts with Defendant's $600.00 in VA benefits, DRS properly calculated Defendant's adjusted monthly net income to be $11,148.00 for child support calculation purposes.

Based upon the record in this matter, it was not an error of law or abuse of discretion to include the business income from Xero Limit as income for Defendant in the support calculation. The DRS accountants did a full review of Defendant's tax returns and determined that the amount utilized in the calculation was disposable monthly income for Defendant. It is respectfully suggested that Defendant's first 2 alleged errors on appeal are without merit.

**II.    Defendant's support obligation was properly calculated.**

Defendant's third alleged error is that we placed "too heavy of a burden on the appellant with a $4,923 monthly ordered amount based on a fictitious picture of the business, thus placing him in excess debt and without enough income for basic sustenance". See Statement of Errors at ¶ 3. Essentially, Defendant argues that his support obligation is too high.

It is well established that "[t]he law in this Commonwealth requires that *each* parent has a duty to support his or her children and *both* parents may have to make sacrifices in order to meet this burden." *D.H. v. R.H*, 900 A.2d 922, 928 (Pa. Super. 2006), citing *Christianson v. Ely*, 838 A.2d 630 (Pa. 2003); *Sutliff v. Sutliff*, 489 A.2d 764 (Pa. Super. 1985). The Court in *D.H.* further noted as follows:

> Pennsylvania    law    has    long    held    that    an    award

18

of child support is based upon the Child Support Guidelines promulgated by our Supreme Court. In relevant part, 23 Pa.C.S.A. § 4322(a), Statewide guideline, provides:

Child and spousal support shall be awarded pursuant to a Statewide guideline as established by general rule by the Supreme Court, so that persons similarly situated shall be treated similarly. The guideline shall be based upon the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support. *In determining the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support, the guideline shall place primary emphasis on the net incomes and earning capacities of the parties,* with allowable deviations for unusual needs, extraordinary expenses and other factors, such as the parties' assets, as warrant special attention. The guideline so developed shall be reviewed at least once every four years.

*D.H., supra.* at 929 (emphasis in original).

Pennsylvania Rule of Civil Procedure 1910.16-1 through Rule 1910.16-7 govern the award of child support and alimony pendente lite. These Rules set forth the support guidelines for the amount of support to be paid by the obligor, set forth the formula and method of calculating a support obligation, provide the rules for deviation from the guidelines and address adjustments and allocations of various additional expenses. In the instant matter, after the parties' incomes were established following review of the file, all documents submitted, the parties' testimony, and the DRS accountant's review of the parties' tax returns, the Court followed the guidelines and formulas set forth in the Rules to enter the July 9, 2019 Order setting Defendant's support obligation. The Order was based on the parties' respective net incomes and considered Plaintiff's childcare expenses (to be discussed in greater detail below) and the parties' respective insurance costs. See Order of Court, *Mann, supra.* (C.P. Northampton 7/11/2019). The calculations were appended to the Order and were prepared in accordance with the applicable Rules of

19

Civil Procedure.

As discussed above, the July 9, 2019 Order, made final by our March 18, 2020 Order, was based upon Defendant's income, as determined by DRS after a full review of his business and personal income tax returns for 2018. As the July 9, 2019 Order was properly calculated, it was not an error of law or abuse of discretion to enter our March 18, 2020 Order making the July 9, 2019 Order final. While Defendant may believe his support obligation is too high, the calculations were done in accordance with the applicable Rules. Therefore, Defendant's third alleged error is without merit.

**III.    Plaintiff's Childcare expense was property calculated and considered.**

Defendant's fourth and final alleged error on appeal is that we wrongfully allowed Plaintiff to claim unsupported childcare expenses in excess of what is needed. See Statement of Errors at ¶ 4. This alleged error is without merit.

Pennsylvania Rule of Civil Procedure 1910.16-6, titled "Support Guidelines. Basic Support Obligation Adjustments. Additional Expenses Allocation", provides, in relevant part, as follows:

> The trier-of-fact may allocate between the parties the additional expenses in subdivisions (a)-(e). If a basic support order is inappropriate under the facts of the case, the trier-of-fact may allocate between the parties the additional expenses.
>
> Except for the subdivisions (b)(4) and (e) expenses, the trier-of-fact shall calculate the parties' proportionate share of the additional expenses after adjusting the parties' monthly net income by the monthly spousal support or alimony *pendente lite* amount received or paid, and then dividing each party's adjusted monthly net income by the parties' combined monthly net income. However, the trier-of-fact shall not adjust the parties' monthly net incomes when apportioning the expenses in child support only cases.

20

**(a) Child care expenses.** The trier-of-fact shall allocate reasonable child care expenses paid by the parties, if necessary to maintain employment or appropriate education in pursuit of income. The trier-of-fact may order that the obligor's share is added to his or her basic support obligation, paid directly to the service provider, or paid directly to the obligee. When a party is receiving a child care subsidy through the Department of Human Services, the expense allocated between the parties is the amount actually paid by the party receiving the subsidy.

...

(1) Documentation of the child care expenses shall be provided to the other party within a reasonable period of time after receipt unless the service provider invoices the parties separately for their proportionate share of the expense. Allocation of expenses for which documentation is not timely provided to the other party shall be within the discretion of the court.

(2) Except as provided in subdivision (3), the total child care expenses shall be reduced to reflect the amount of the federal child care tax credit available to the eligible party, whether or not the credit is actually claimed by that party, up to the maximum annual cost allowable under the Internal Revenue Code.

(3) The federal child care tax credit shall not be used to reduce the child care expenses subject to allocation between the parties if the eligible party is not qualified to receive the credit.

Pa.R.C.P. No. 1910.16-6(a) (emphasis in original).

As was noted at the June 17, 2019 conference, Plaintiff continued to have nanny and preschool expenses for the children of this action. See Conference Notes, *Mann*, *supra*. (C.P. Northampton 6/17/2019). The preschool cost was reported as $120.00 per month for one child during the school year. *Id.* The conference officer noted that the Plaintiff was utilizing a nanny at a cost of $12.00 per hour and that consideration had been given to that expense in previous Court Orders for thirty (30) hours per week, for a

21

period of thirty-eight (38) weeks per year. *Id.* Plaintiff indicated that she continued to use the nanny as the youngest child of the action remained in preschool. *Id.* Plaintiff set forth the hours/days the nanny is utilized and indicated that the parties utilized the nanny during the marriage. *Id.* The conference officer noted that since there is still a child in preschool, the nanny expense would continue to be considered. *Id.*

Contrary to Defendant's assertion, the nanny expense and the preschool expense were properly documented. As set forth in the July 18, 2019 conference officer notes, "the plaintiff provided an updated notarized contract for the nanny for the children, as well as [youngest child]'s enrollment in preschool at a cost of $120 per month for the 2018-2019 school year." See Alimony Pendente Lite Follow-Up Notes, *Mann, supra.* (C.P. Northampton 7/18/2018). The preschool expense had been previously permitted for one of the older children by Judge Murray in a prior Order, and it was deemed appropriate to allow it for the parties' youngest child as well. See Conference Notes, *Mann, supra.* (C.P. Northampton 6/17/2019).

While Defendant questions the necessity of the nanny, claiming he could take on some of the childcare time, Defendant acknowledged that the parties have a custody order in place that dictates Defendant's time with the children. See N.T., Deposition of Defendant, at p. 30. Furthermore, Defendant testified in his deposition that he travels for his current job, and, as of the date of the deposition, had several trips scheduled during which he would be gone for up to a week at a time. *Id.* at pp. 34-35.

Based upon the record, it was not an error of law or abuse of discretion to consider Plaintiff's nanny and preschool expenses in the support calculation. Contrary to Defendant's assertion, the childcare expenses were not "unsupported" or "in excess of

22

what is needed." The childcare expenses were properly calculated, supported by the required documentation and properly utilized in the calculation of Defendant's support obligation. Therefore, Defendant's fourth and final alleged error is without merit.

## Conclusion

Based upon the foregoing, Defendant's appeal is without merit and should be denied. The July 9, 2019 Order properly calculated Defendant's support obligation utilizing the income available to him from his business, his employment, and his VA benefits. Likewise, Plaintiff's income was properly calculated, and the childcare and preschool expenses were correctly factored into Defendant's support obligation as provided in the Rules of Civil Procedure. Each of Defendant's alleged errors is without merit, and the appeal should be denied.

**BY THE COURT**

JENNIFER R. SLETVOLD, J.